FRANK TURNEY AND GINGER TURNEY, APPELLEES, V.
WERNER ENTERPRISES, INC., APPELLANT.

618 N.W. 2d 437

Filed September 29, 2000.   No. S-99-622.

Walter R. Metz, Jr., for appellant.

Robin L. Binning and Michael J. Plambeck, of Binning & Plambeck, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Appellees, Frank Turney and Ginger Turney, brought a declaratory judgment action petitioning the district court to determine the "rights, duties and legal obligations" of the Turneys and Werner Enterprises, Inc. (Werner), as the result of a settlement reached between the Turneys and third-party tort-feasors. The district court for Sarpy County found that Werner was not entitled to any credit or setoff for future workers' compensation payments to the Turneys. Werner appealed, and we moved the case to our court pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTUAL BACKGROUND

On September 16, 1992, the Turneys, while working for Werner as tractor-trailer operators, were involved in an accident in Pennsylvania. A spare tire from another tractor-trailer came loose and struck the Turneys' tractor-trailer. The Turneys both suffered serious head, neck, and back injuries. The Turneys received temporary total workers' compensation disability benefits that were paid by Werner, which is self-insured under Nebraska's workers' compensation laws.

In 1994, the Turneys, without joining Werner as a party, brought suit in Pennsylvania against the parties claimed to be responsible for the accident: Mylet Trucking Company, Joseph Yamulla, and Raymond Mylet (collectively the tort-feasors). Mylet Trucking Company was, at the time, insured by General

Insurance Company of America (General Insurance) and repre-
sented by attorney Allen L. Rothenberg.

The tort-feasors eventually agreed to settle with the Turneys
for $1 million, the maximum limit of the policy with General
Insurance. In January 1996, during negotiations between the
Turneys and the tort-feasors, counsel for the Turneys contacted
Werner to ascertain how much Werner had paid in workers'
compensation benefits. Werner informed counsel for the
Turneys that as of January 16, 1996, it had paid $242,235.80.
The record shows that Werner thereafter participated in negotia-
tions regarding the language of a proposed settlement agreement
between the Turneys, Werner, and the tort-feasors. Werner, how-
ever, eventually refused to sign the proposed settlement agree-
ment, concluding that characterizing the settlement as payment
for the Turneys' "pain and suffering only" was adverse to
Werner's subrogated workers' compensation interests under
Neb. Rev. Stat. § 48-118 (Reissue 1993).

Instead, on May 10, 1996, Werner signed a separate "General
Release" document. The parties to this general release included
Werner, the tort-feasors, and their insurer, General Insurance,
but did not include the Turneys. In this document, Werner
released any and all claims arising out of the September 1992
accident against the tort-feasors and General Insurance in
exchange for $242,235.80. On June 1, 1996, the Turneys, the
tort-feasors, General Insurance, and Rothenberg executed a sep-
arate settlement agreement. Werner had been removed as a sig-
natory to this settlement agreement because of its earlier refusal
to sign.

Under the terms of the settlement agreement, each of the
Turneys received an initial payment of $350,000. Additionally,
the Turneys were to receive approximately $16,600 each per
year for 10 years.

Paragraph 14 of the settlement agreement states in part:

> It is further understood and agreed by all parties that the
> Law Firm of Allen Rothenberg, will immediately pay to
> Werner Enterprises, Inc., out of the "initial payment", the
> amount of $242,235.80, which represents full and com-
> plete payment of any and all claims or causes of action
> which Werner Enterprises, Inc. may have against the plain-

tiffs, the firm, the defendants or the insurer with respect to payments of worker's compensation benefits including, but not limited to, medical bills, lost wages, defense costs, attorney's fees, administrative costs and any other claims Werner Enterprises, Inc. may have against any party to this agreement.

The payment to Werner was not immediately made. On December 5, 1996, Werner wrote to Rothenberg in an attempt to collect the $242,235.80. On December 10, Werner wrote a second letter to Rothenberg, noting:

Werner has not been given a single legitimate or legally cognizable reason why your law firm has failed to abide by the terms of the Settlement Agreement, to which it [Rothenberg] also is a signatory party, in respect of why the worker's compensation lien payments funded by Werner have not been "immediately" paid as negotiated, agreed to, and required by all parties to the Settlement Agreement and Release . . . .

Rothenberg then paid Werner $242,235.80.

On September 8, 1996, during the dispute over the $242,235.80, Werner stopped making workers' compensation payments to the Turneys, asserting that it was entitled to a credit against future payments under § 48-118 until the proceeds of the settlement were exhausted. In January 1997, the Turneys petitioned the Nebraska Workers' Compensation Court to order Werner to resume workers' compensation benefits to them as of September 1996. The following December, the compensation court ordered that the case be stayed until "the subrogation of Werner Enterprises, Inc., pursuant to §48-118, R.S. Supp. 1996, has been determined."

The Turneys then brought this declaratory judgment action in the Sarpy County District Court. Werner contended in district court that its subrogation interest in the settlement proceeds included, in addition to the $242,235.80 already received, a separate right to a credit against future workers' compensation payments. The Turneys contended Werner was a third-party beneficiary to the settlement agreement and that as such, Werner had expressly bargained away its right to a credit for future payments under § 48-118 in exchange for the $242,235.80 payment.

At the bench trial, Werner sought to introduce certain testimony from one of its attorneys representing Werner in the settlement negotiations. The attorney was asked whether, in his opinion, Werner followed the usual procedures utilized by employers when they are entitled to a credit against future workers' compensation benefits. The Turneys' counsel objected on the basis of relevance, and the objection was sustained.

Werner also sought to introduce testimony from its workers' compensation supervisor regarding the amount of benefits the Turneys received from June to September 1996. The Turneys' counsel objected on the basis of relevance, and the objection was sustained.

In the district court's April 1999 order, it found that "the applicable law with respect to Werner's subrogation rights and the limitations thereon is Pennsylvania law" and concluded that Werner was not entitled to any credit against future workers' compensation payments. Werner filed a motion for new trial, which was denied, and this appeal followed.

## ASSIGNMENTS OF ERROR

Werner asserts, rephrased and summarized, that the trial court erred in (1) finding that Pennsylvania law determined Werner's subrogation rights; (2) finding that Werner was a third-party beneficiary of the settlement agreement and that under the terms of the settlement agreement, Werner waived its right to assert a credit against future workers' compensation payments; (3) finding that the Turneys would have been entitled under § 48-118 to deduct a reasonable portion of their attorney fees; (4) excluding the testimony of Werner's attorney and Werner's workers' compensation supervisor; (5) failing to find that the terms of the settlement agreement were ambiguous; and (6) denying Werner's motion for a new trial.

## STANDARD OF REVIEW

In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *Combined Insurance v. Shurter*, 258 Neb. 958, 607 N.W.2d 492 (2000); *Johnson v. Clarke*, 258 Neb. 316, 603 N.W.2d 373 (1999).

## ANALYSIS

### CONFLICT OF LAWS

Werner asserts the trial court erred in determining that "the applicable law with respect to Werner's subrogation rights and the limitations thereon is Pennsylvania law." Werner first argues that neither the trial court nor this court should apply Pennsylvania law to this dispute because this issue was not raised by the pleadings.

■ Assuming without deciding that the Turneys' petition for declaratory judgment properly raised the conflict of laws issue, it is nevertheless generally accepted that an employer's or insurer's subrogation interest in an injured employee's recovery from a third-party tort-feasor is determined by the law of the state in which the employee obtained workers' compensation benefits. See, *Van Den Heuval v. Wallace*, 382 Pa. Super. 242, 555 A.2d 162 (1989); *LaBombard v. Peck Lumber Co.*, 141 Vt. 619, 451 A.2d 1093 (1982); *Perry v. Carter*, 620 S.W.2d 50 (Mo. App. 1981); 9 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 144 (1999).

In this case, the Turneys entered into an employment contract with Werner, a corporation licensed and doing business within the State of Nebraska, with its corporate offices in Sarpy County, Nebraska. The Turneys received benefits under Nebraska workers' compensation statutes and still have a claim for benefits pending before the Nebraska Workers' Compensation Court. Under these facts, we determine that the trial court erroneously concluded that Werner's subrogated workers' compensation interest in the settlement proceeds was governed by Pennsylvania's workers' compensation statutes. Werner's subrogated interest in the settlement proceeds is properly determined according to § 48-118.

For the sake of completeness, we note that paragraph 21 of the settlement agreement does provide that the settlement agreement itself "shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania." However, we need not determine the effect of this provision, for as discussed more fully below, Werner did not sign the settlement agreement, nor is Werner bound by its terms as a third-party beneficiary.

WERNER'S SUBROGATED INTEREST UNDER § 48-118

Under § 48-118, prior to its amendment by 1994 Neb. Laws, L.B. 594, employers and insurers were subrogated "dollar for dollar" in any recovery against a third-party tort-feasor. See *Jackson v. Branick Indus.*, 254 Neb. 950, 581 N.W.2d 53 (1998). With the enactment of L.B. 594, insurers and employers are now subrogated for the amount judicially determined to be a fair and equitable division of the settlement under the circumstances. *Jackson v. Branick Indus., supra.* See, also, § 48-118 (Cum. Supp. 1996).

We have determined that L.B. 594 was a substantive change to § 48-118 and cannot be applied retroactively. *Jackson v. Branick Indus., supra.* Thus, because the Turneys' accident occurred prior to the enactment of L.B. 594, Werner's dollar-for-dollar interest includes both reimbursement for the workers' compensation payments already paid and a credit against any payments that may be due in the future. See § 48-118 (Reissue 1993).

However, the Turneys argue that Werner relinquished its subrogated workers' compensation interests under § 48-118 by using the language of the settlement agreement to assert its right to the $242,345.80. The Turneys contend that Werner, in invoking the language of the settlement agreement, became a third-party beneficiary and is now bound by the same settlement agreement which Werner refused to sign.

SETTLEMENT AGREEMENT

In asserting that Werner is a third-party beneficiary of the settlement agreement, the Turneys primarily rely on two letters sent by Werner to Rothenberg in which Werner asserted its right to be paid $242,235.80 out of the Turneys' settlement proceeds held by Rothenberg. In the December 10, 1996, letter, Werner points out that "the worker's compensation lien payments funded by Werner have not been 'immediately' paid as negotiated, agreed to, and required by all parties to the Settlement Agreement and Release." In the December 5, 1996, letter, Werner quotes paragraph 14 of the settlement agreement, which states in part that "the Law Firm of Allen Rothenberg, will immediately pay to Werner Enterprises, Inc., out of the 'initial payment', the amount of $242,235.80."

The Turneys point to additional language contained in paragraph 14, also quoted by Werner in its letters to Rothenberg, which states that the $242,235.80 "[r]epresents full and complete payment of any and all claims or causes of action which Werner Enterprises, Inc. may have against the plaintiffs." The Turneys assert that because Werner invoked paragraph 14 to collect its $242,235.80, Werner is now also bound to the other language in paragraph 14 releasing all other claims Werner may have against the Turneys, including any claim for future credit.

■ We find on these facts that Werner is not bound as a third-party beneficiary to the settlement agreement. In order to be bound to a contract as a third-party beneficiary, one must accept a benefit conferred by a contract, wherein the contracting parties by express stipulation or by reasonable intendment contemplated and made provision for the rights and interests of the one not named as a party to the contract. *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994); *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993).

We first note that Werner's subrogated right to $242,235.80 existed as a matter of law under § 48-118 and was not a benefit conferred by the settlement agreement. The Turneys assert, however, that there was a benefit conferred on Werner under the settlement agreement in that Werner was released from any obligation to pay its portion of the Turneys' attorney fees under § 48-118. We find nothing in the settlement agreement that either expressly or impliedly suggests that the Turneys released Werner from its potential liability for attorney fees in exchange for the $242,235.80. While the Turneys have not yet chosen to collect an attorney fee from Werner, the Turneys did not, as a bargained-for term of the settlement agreement, waive their right under § 48-118 to seek such reimbursement from Werner.

The settlement agreement, instead of conferring a benefit on Werner, arguably could have jeopardized Werner's subrogated rights in the settlement proceeds by characterizing the Turneys' recovery as "for pain and suffering only." Pain and suffering as a separate element of damages is not recoverable in a workers' compensation case. The settlement agreement conferred no benefit on Werner, whose right to the $242,235.80 existed as a mat-

ter of statutory law under § 48-118. This is why Werner refused to sign the document.

The Turneys next contend that Werner impliedly waived its right to a future credit by accepting the $242,235.80. As we stated in *Turner v. Metro Area Transit*, 220 Neb. 189, 368 N.W.2d 809 (1985), accepting what one is entitled to by statute is not sufficient to show an implied waiver. Werner did not impliedly waive its right to a future credit.

◼ The Turneys raised for the first time during oral argument the question of whether Werner was actually entitled to $242,235.80 for past workers' compensation payments to the Turneys. However, there was no issue framed by the pleadings regarding the amount of workers' compensation payments already paid to the Turneys by Werner, and the district court did not pass judgment on that issue. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997); *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996).

We find that Werner is not a third-party beneficiary of the settlement agreement because the agreement did not confer any benefit on Werner. Werner also did not impliedly waive its right to a credit for future payments under § 48-118. Under § 48-118, we conclude that Werner is entitled to a credit against the settlement proceeds for future workers' compensation payments to the Turneys until the settlement proceeds are exhausted.

## ATTORNEY FEES

Having concluded that Werner is entitled to a credit against future workers' compensation payments, we next address whether Werner is liable for a portion of the Turneys' attorney fees under § 48-118. Werner argues in its brief that it is not obligated to pay any portion of the attorney fees because the Turneys failed to comply with the notice provisions under § 48-118.

◼ In *Combined Insurance v. Shurter*, 258 Neb. 958, 607 N.W.2d 492 (2000), and *Austin v. Scharp*, 258 Neb. 410, 604 N.W.2d 807 (1999), which were decided after this case was fully briefed, we held that if an employer, rather than taking advan-

tage of its opportunity to have the settlement set aside, seeks to share in the settlement proceeds under § 48-118, the employer is obligated to pay a reasonable portion of the employee's attorney fees, and any defect in the notice provided to the employer is waived.

While *Shurter* and *Scharp* were decided under the more recent § 48-118 (Reissue 1998), their reasoning is equally applicable under § 48-118 (Reissue 1993) because the relevant language is the same under both versions of § 48-118. *Combined Ins. v. Shurter*, 258 Neb. at 963, 607 N.W.2d at 497 ("provisions of § 48-118 relating to lawsuits against third parties and notice were unaffected by L.B. 594").

The record shows that although Werner did not receive notice and was not made a party pursuant to § 48-118, Werner participated in the negotiations surrounding the settlement, chose not to have the settlement agreement set aside, and shared in the settlement proceeds. On this record, we determine that Werner, through its "unequivocal conduct" of sharing in the settlement proceeds, has waived any objections it might have had to such settlement based on lack of notice under § 48-118. Therefore, Werner is liable under § 48-118 for a reasonable portion of the Turneys' attorney fees and expenses.

Given our determination of the parties' rights under § 48-118, it is not necessary for us to reach Werner's remaining assignments of error.

## CONCLUSION

We determine that the trial court erred in concluding that Werner waived its right to assert a credit against future workers' compensation payments. We further determine that Werner is liable under § 48-118 to reimburse the Turneys for Werner's reasonable portion of the attorney fees and expenses incurred in the recovery of Werner's subrogated interest. Accordingly, we remand this cause to the trial court to determine the appropriate distribution of the settlement proceeds consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.