Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/08/2017 08:12 AM CDT

NORMAN KROEMER, appellee, v. OMAHA TRACK
EQUIPMENT, L.L.C., AND THE TIE YARD OF OMAHA,
NOW KNOWN AS OMAHA TRACK, INC., appellees,
AND RIBBON WELD, LLC, appellant.

___ N.W.2d ___

Filed June 16, 2017.     No. S-16-856.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

2. **Workers' Compensation: Judgments: Appeal and Error.** Distribution of the proceeds of a judgment or settlement under Neb. Rev. Stat. § 48-118.04 (Reissue 2010) is left to the trial court's discretion and reviewed for an abuse of that discretion.

3. **Judges: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.

4. **Workers' Compensation: Subrogation.** Neb. Rev. Stat. § 48-118 (Reissue 2010) grants an employer who has paid workers' compensation benefits to an employee injured as a result of the actions of a third party a subrogation interest against payments made by the third party.

5. **Workers' Compensation.** A settlement of a third-party claim is void under Neb. Rev. Stat. §48-118.04(1) (Reissue 2010) unless the settlement is either agreed upon in writing by the employee and employer or its insurer or determined by the court to be fair and reasonable.

6. **Workers' Compensation: Insurance.** In determining the fairness and reasonableness of a settlement of a third-party claim under the Nebraska Workers' Compensation Act, a court considers liability, damages, and the ability of the third person and his or her liability insurance carrier to satisfy any judgment.

7. **Workers' Compensation: Subrogation.** The policies behind the Nebraska Workers' Compensation Act favor a liberal construction in

favor of an employer's statutory right to subrogate against culpable third parties.

8. **Workers' Compensation: Insurance: Case Disapproved.** *In re Estate of Evertson*, 23 Neb. App. 734, 876 N.W.2d 678 (2016), is disapproved to the extent that the court considered payment of premiums and comparative risk in allocating none of the proceeds of a workers' compensation settlement to the insurer.

9. **Workers' Compensation: Subrogation: Equity.** Although Neb. Rev. Stat. § 48-118.04(2) (Reissue 2010) calls for a fair and equitable distribution, subrogation in workers' compensation cases is based on statute, and not in equity.

10. **Workers' Compensation: Insurance: Equity.** A distribution of the proceeds of a judgment or settlement under Neb. Rev. Stat. § 48-118.04(2) (Reissue 2010) must be fair and equitable to both the employee and the employer or its insurer.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed in part, and in part reversed and remanded with direction.

Julie A. Jorgensen, of Morrow, Willnauer, Klosterman & Church, L.L.C., for appellant.

Ronald L. Brown, of Brown & Theis, L.L.P., for appellee Norman Kroemer.

Gregory F. Schreiber and Albert M. Engles, of Engles, Ketcham, Olson & Keith, P.C., and, on brief, Brock S.J. Hubert, for appellee Omaha Track Equipment, L.L.C.

Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

An injured employee proposed to settle his third-party suit for $150,000. His employer, which had a subrogation interest of over $200,000, contested the settlement. The district court determined that the settlement was fair and reasonable but

allocated none of it to the employer. Because of the disputed litigation risk, approval of the settlement was not an abuse of discretion. But under our statutory scheme, the allocation of zero to the employer was legally untenable. We affirm in part and in part reverse, and remand with direction.

## II. BACKGROUND

At the relevant time, Ribbon Weld, LLC, and Omaha Track Equipment, L.L.C. (OTE), were both wholly owned subsidiaries of The Tie Yard of Omaha, now known as Omaha Track, Inc. Ribbon Weld's employees occasionally used OTE's shop to service their equipment and, while doing so, used OTE's tools. Norman Kroemer, a Ribbon Weld employee, sustained an eye injury in connection with the use of OTE's tools at OTE's shop.

Kroemer and Ribbon Weld entered into a compromise lump-sum settlement for $80,000, which the Nebraska Workers' Compensation Court approved. After payment of the lump sum, Ribbon Weld's subrogation interest totaled $207,555.01.

Kroemer then sued OTE, The Tie Yard of Omaha, and Ribbon Weld. The suit alleged negligence. Kroemer made Ribbon Weld a party "for the limited purpose provided by [Neb. Rev. Stat. §] 48-118 [(Reissue 2010)]." OTE asserted numerous affirmative defenses, including comparative negligence. In Ribbon Weld's answer, it asked that any recovery by Kroemer be subject to its subrogation right.

Kroemer and OTE engaged in mediation to settle the third-party claim. Ultimately, they negotiated a compromise settlement of claims in the amount of $150,000. Although Ribbon Weld did not contribute or share in litigation expenses, it contested the proposed settlement.

The district court held a settlement and allocation hearing under Neb. Rev. Stat. § 48-118.04 (Reissue 2010). Kroemer testified about the accident and injury, which occurred as he and a coworker endeavored to cut through a "spot-weld on [an] Allen wrench." Kroemer planned to hold the Allen wrench

and socket with a pair of pliers as his coworker operated a "Milwaukee grinder with the wheel." When Kroemer's coworker started the grinder, the wheel exploded, sending shrapnel into Kroemer's face and left eye. Kroemer was wearing safety glasses but not a face shield. After undergoing three surgeries, Kroemer ultimately sustained a 95-percent loss of vision in his eye. Due to the injury, Kroemer no longer physically qualified for a commercial driver's license. He returned to work with Ribbon Weld, but had restrictions of light-duty work and no dusty conditions. Ribbon Weld subsequently sold its business, and Kroemer lost his employment a short time later.

The district court received evidence concerning the value of Kroemer's case. One expert opined that "there was a very substantial probability (80%-90%) of a jury verdict for the defendants were the case to proceed to trial." He stated that a jury could have easily determined that Kroemer's comparative fault was greater than 50 percent. Another expert valued Kroemer's claim in the range of $850,000 to $1,250,000, before consideration of comparative negligence. But he also opined that the settlement of $150,000 was in Kroemer's best interests, due to the high probability of a jury verdict for the defendants. Ribbon Weld's expert opined that it was "more than likely (70-80% chance) that a Plaintiff's verdict would be reached," that a jury would likely assess "contributory negligence" in the range of 25 to 35 percent, and that Kroemer would have likely recovered in excess of $500,000 if the case proceeded to trial. Ribbon Weld's expert believed that the settlement was inadequate given the value of the case and that the settlement appeared to have been accepted with the intention of no, or very minimal, payback to Ribbon Weld of the subrogation amount.

The district court determined that the settlement of $150,000 was reasonable. It made the following allocation: $94,834.27 to Kroemer, $55,165.73 for attorney fees and expenses, and $0 to Ribbon Weld.

Ribbon Weld appealed, and we granted its petition to bypass review by the Nebraska Court of Appeals. We subsequently ordered supplemental briefing, which we have considered in resolving this appeal.

## III. ASSIGNMENTS OF ERROR

Ribbon Weld assigns that the district court erred in (1) finding the settlement to be fair and reasonable and (2) finding that an allocation of $0 to Ribbon Weld was fair and equitable.

## IV. STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[1]

[2,3] Distribution of the proceeds of a judgment or settlement under § 48-118.04 is left to the trial court's discretion and reviewed for an abuse of that discretion.[2] A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.[3]

## V. ANALYSIS

### 1. Overview

[4,5] We first set forth two principles of law under the Nebraska Workers' Compensation Act (the Act).[4] First, § 48-118 grants an employer who has paid workers' compensation benefits to an employee injured as a result of the actions of a third party a subrogation interest against payments made by the third party.[5] Second, a settlement of a third-party claim

---

[1] *Estermann v. Bose, ante* p. 228, 892 N.W.2d 857 (2017).

[2] *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007).

[3] *Id.*

[4] Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2010 & Cum. Supp. 2016).

[5] *Burns v. Nielsen, supra* note 2.

is void under § 48-118.04(1) unless the settlement is either agreed upon in writing by the employee and employer (or its insurer) or determined by the court to be fair and reasonable. We now turn to the assigned errors.

## 2. Fairness and Reasonableness of Settlement

[6] Ribbon Weld first challenges the amount of the settlement. In determining the fairness and reasonableness of a settlement of a third-party claim under the Act, the court considers "liability, damages, and the ability of the third person and his or her liability insurance carrier to satisfy any judgment."[6] We examine these factors in reverse order.

### (a) Ability to Satisfy Judgment

The record does not contain much evidence as to OTE's ability to satisfy the judgment. Kroemer testified that the proposed settlement of $150,000 did not reflect the limits of OTE's insurance policy. Accordingly, the ability of OTE and its liability insurance carrier to pay was not an impediment to a greater settlement.

### (b) Damages

The estimated damages in this case were significant. Kroemer sustained a 95-percent loss of vision in his left eye. Kroemer's expert valued Kroemer's claim between $850,000 to $1,250,000. Ribbon Weld's expert agreed with an assessment of damages set forth in a demand letter valuing the case at $858,989.86.

### (c) Liability

Under the facts of this case, the deciding factor on the reasonableness of the settlement is the issue of liability. Kroemer's two experts opined that there was a high probability

---

[6] § 48-118.04(1)(b).

of a jury verdict in favor of OTE. Ribbon Weld's expert, on the other hand, opined that it was "more than likely" a jury would return a verdict in Kroemer's favor and that the jury would assess contributory negligence in the range of 25 to 35 percent.

Evidence reflected negligence on Kroemer's part. Kroemer planned to hold the Allen wrench with pliers because the vice on the table was in use. He knew that using the vice would have been safer, and he testified that he would not have been injured if a vice were used. Kroemer believed Ribbon Weld's rules or regulations required use of safety glasses and a face shield when using a hand grinder. But he was not wearing a face shield. As the supervisor, it was Kroemer's responsibility to make sure his crew wore safety glasses and a face shield. Kroemer testified that when a member of his crew used a hand grinder, a guard was required to be affixed to the grinder. He did not recall seeing a Ribbon Weld grinder without a guard. A guard protects the operator from being struck by flying debris generated from using the grinder. But the grinder selected by Kroemer's coworker did not have a guard.

Other evidence lessened the effect of Kroemer's own negligence. On an earlier occasion, an OTE shop foreman told Kroemer that OTE employees used the same grinder without a guard. That foreman also told Kroemer that they used a 7-inch wheel on a 4-inch grinder. Although a person using a hand grinder should wear a face shield, Kroemer was not the person doing the grinding. Further, Kroemer did not select the grinder. And Ribbon Weld points out that a guard may not have prevented the injury because Kroemer was injured as a result of the tool's exploding—not by any debris resulting from grinding. Kroemer testified that it was possible he would have been injured even if the grinder had a guard, but that his injury would have been less likely if the grinder had a guard.

### (d) Resolution

After consideration of the relevant factors, we cannot say that the district court abused its discretion in finding the settlement to be fair and reasonable. Although there was potential for a large verdict in Kroemer's favor, he accepted a greatly reduced settlement due to concerns that he would receive nothing if a jury determined that his comparative negligence was 50 percent or more. We cannot fault him for declining to take this gamble.

### 3. Allocation of Settlement Proceeds

Ribbon Weld argues that the district court abused its discretion in allocating none of the proceeds of Kroemer's $150,000 settlement to Ribbon Weld. We observe at the outset that Ribbon Weld does not contend the court abused its discretion in awarding $55,165.73 for attorney fees and expenses. At the hearing, Ribbon Weld's counsel stated that "whatever the settlement level is, we do believe that it was obtained by [Kroemer's counsel], and attorney fees and costs are simply not an issue in this case." Thus, our review in this case focuses on the allocation of $94,834.27 to Kroemer and of $0 to Ribbon Weld.

### (a) Overview

When an employee injured as a result of a third person's tortious conduct receives compensation from his or her employer and from the tort-feasor, an issue arises as to how to divide any proceeds obtained from the third party. "The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse it for its compensation outlay, and to give the employee the excess."[7]

---

[7] 10 Arthur Larson et al., Larson's Workers' Compensation Law § 110.02 at 110-3 (2016).

Doing so prevents a double recovery by the employee. "Under most subrogation statutes the payor of compensation gets reimbursement for the amount of its expenditure as a first claim upon the proceeds of the third-party recovery, and the employee gets the excess."[8] But since 1994, our Legislature has rejected that approach. Our statute clearly mandates that proceeds in excess of the employer's subrogation interest must be paid forthwith to the employee.[9] But how the remaining proceeds should be divided does not automatically allocate first claim to the employer.

At least two states have statutes that reject the employer-first approach and yet provide for a fully or partially guaranteed allocation to the employee. Wisconsin mandates that after deducting the reasonable cost of collection, the injured employee receives, at a minimum, one-third of the amount recovered.[10] In Georgia, a statute provides that an employer or insurer may recover on its subrogation lien only "if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury."[11] We have described the latter concept as the "made whole" doctrine.[12]

Nebraska's current statute rejects both the "first claim" and the "made whole" doctrines. Under § 48-118.04(2), the trial court is required to "order a fair and equitable distribution of the proceeds of any judgment or settlement." The distribution is left to the court's discretion and "simply requires the court to determine a reasonable division of the proceeds among the

---

[8] *Id.*, § 117.01[1] at 117-2.

[9] See § 48-118.

[10] See Wis. Stat. Ann. § 102.29(1)(b) (West Cum. Supp. 2016).

[11] Ga. Code Ann. § 34-9-11.1(b) (2008).

[12] See *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415 (2006).

parties."[13] Prior to a 1994 amendment to § 48-118,[14] "employers and insurers were subrogated 'dollar for dollar' in any recovery against a third-party tort-feasor."[15] But through the amendment, employers and insurers were "subrogated for the amount judicially determined to be a fair and equitable division of the settlement under the circumstances."[16] We have determined that "[t]here is no indication, either in the statutory language or the legislative history, that § 48-118.04 was intended to infringe on the right of subrogation guaranteed by § 48-118 beyond the extent necessary to effectuate a reasonable settlement."[17] We have also stated that a fair and equitable distribution does not require that an employee be "made whole" or that tort proceeds be split proportionately.[18]

### (b) *Bacon v. DBI/SALA*

[7] We discussed the purposes of the Act vis-a-vis workers' compensation subrogation in *Bacon v. DBI/SALA*.[19] We explained that "the beneficent purposes of the Act concern the employee's ability to promptly obtain workers' compensation benefits—not the employee's ability to additionally retain recovery against negligent third parties in tort actions."[20] We found "no reason to conclude that the beneficent purposes of the Act require us to narrowly interpret the employer's statutory subrogation rights."[21] Rather, we determined that "the

---

[13] See *Burns v. Nielsen, supra* note 2, 273 Neb. at 735, 732 N.W.2d at 650.

[14] See 1994 Neb. Laws, L.B. 594.

[15] *Turney v. Werner Enters.*, 260 Neb. 440, 446, 618 N.W.2d 437, 441 (2000).

[16] *Id.* at 446, 618 N.W.2d at 442.

[17] *Burns v. Nielsen, supra* note 2, 273 Neb. at 732, 732 N.W.2d at 648.

[18] See *Turco v. Schuning, supra* note 12.

[19] *Bacon v. DBI/SALA*, 284 Neb. 579, 822 N.W.2d 14 (2012).

[20] *Id.* at 588, 822 N.W.2d at 24.

[21] *Id.*

policies behind the Act favor a liberal construction in favor of the employer's statutory right to subrogate against culpable third parties."[22] In an effort to balance the rights of injured employees against the costs to employers, most workers' compensation acts "liberally allow employers to shift liability onto third parties whenever possible."[23] We iterated that "§ 48-118 was enacted 'for the benefit of the employer'"[24] and that where a third party negligently causes the employee's injury, "'employers who are required to compensate employees for injuries are intentionally granted a measure of relief equivalent to the compensation paid and the expenses incurred.'"[25]

### (c) *In re Estate of Evertson*

Recently, the Court of Appeals affirmed an allocation of zero to a workers' compensation carrier in *In re Estate of Evertson*.[26] In that case, the carrier claimed a subrogation interest in the entire $250,000 settlement allocated to the victim's surviving spouse. The county court found that a fair and equitable distribution was for the spouse to receive $207,416.69, for the attorneys to receive $42,583.31, and for the carrier to receive nothing.

In affirming the county court's distribution, the Court of Appeals set out the factors considered by the county court. The Court of Appeals noted that the county court considered the victim's lengthy marriage and "factors such as that [the workers' compensation carrier] had charged and received the necessary premiums to provide workers' compensation coverage . . . and that under all the circumstances, [the workers' compensation carrier's] financial risk was minimal and

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *In re Estate of Evertson*, 23 Neb. App. 734, 876 N.W.2d 678 (2016), *vacated on other grounds* 295 Neb. 301, 889 N.W.2d 73.

insurance companies are in the business of assuming risk."[27] The Court of Appeals disagreed with the carrier's "assessment that the county court was considering an equitable assessment in considering there was no evidence that [the workers' compensation carrier] helped finance the settlement."[28] Instead, the Court of Appeals stated that "the county court's language indicates that the court was considering that [the workers' compensation carrier] did not expend any funds in securing the settlement."[29] Ultimately, the Court of Appeals could not say that the county court abused its discretion in distributing the settlement proceeds.

We granted further review in *In re Estate of Evertson*. But because we determined that the county court lacked subject matter jurisdiction to hear and decide the subrogation matter, we did not reach the merits of the appeal—which included the carrier's assignment that the Court of Appeals erred in affirming a distribution that was not fair and equitable.[30]

In the instant case, the district court clearly relied on the Court of Appeals' decision in *In re Estate of Evertson* in making its distribution. After reciting the above-quoted language from *In re Estate of Evertson*, the court stated that it considered the nature of Kroemer's loss, the substantial damages he suffered, the insurer's charging and receiving a premium of nearly $175,000 for the insurance coverage, and the "comparative risk to the insurance carrier versus Kroemer." But neither the district court in the instant case nor the Court of Appeals in *In re Estate of Evertson* considered the effect of our decision in *Bacon*.

The reasoning in *In re Estate of Evertson* is flawed for several reasons. First, the payment of premiums for workers'

---

[27] *Id.* at 741, 876 N.W.2d at 684.

[28] *Id.*

[29] *Id.*

[30] See *In re Estate of Evertson*, 295 Neb. 301, 889 N.W.2d 73 (2016).

compensation coverage is not an appropriate factor to consider in distributing proceeds recovered from a third party. "The . . . Act requires, with few exceptions, that every employer carry workers' compensation insurance."[31] Thus, an employer (or its insurer) should not be stripped of its statutory subrogation right for obtaining such insurance.

Second, the comparative risk between an insurance company and employee is likewise an inappropriate factor. Every insurance company is in the business of assuming risk. Consideration of this factor would nearly always elevate the employee's right to the proceeds over that of the employer or its insurer.

Third, in making a distribution of the recovery, consideration of an employer's or its insurer's participation in obtaining the settlement is suspect. The statutes give the employer or its insurer the option to actively prosecute its subrogation claim or to allow the employee to prosecute the claim and then obtain a portion of the recovery and share in the expenses.[32] An employer's (or its insurer's) right to reimbursement is preserved even if it selects the latter option.

Fourth, the county court and Court of Appeals gave short shrift to the right of the employer or its insurer to recover on its subrogation interest. We have stated that § 48-118 "encourag[es] prompt payment of benefits, even when a third party is liable for the injury, by providing an employer or insurer with the means to recover at least a portion of its payout."[33] The lower courts in *In re Estate of Evertson* did not allow the insurer to recover any of its payout. Frankly, it is difficult to imagine a situation in which an allocation of $0 to an employer or insurer with a sizable

---

[31] *Travelers Indemnity Co. v. International Nutrition*, 273 Neb. 943, 945, 734 N.W.2d 719, 722 (2007).

[32] See, generally, §§ 48-118 to 48-118.03 (Reissue 2010).

[33] *Burns v. Nielsen, supra* note 2, 273 Neb. at 733, 732 N.W.2d at 649.

subrogation interest would be a fair and equitable distribution of proceeds.

[8] We disapprove the Court of Appeals' decision in *In re Estate of Evertson*[34] to the extent that the court considered payment of premiums and comparative risk in allocating none of the proceeds of the settlement to the insurer.

### (d) Distribution in Instant Case

[9] The district court's distribution in this case ignored Ribbon Weld's statutory right to subrogation. Under § 48-118, Ribbon Weld is entitled to "reimbursement, under the right of subrogation, of any compensation paid." Instead, the court allocated nothing to Ribbon Weld. Although the court did not explicitly use "made whole" language, it essentially applied a "made whole" formulation when it denied Ribbon Weld any recovery. We have found error when a trial court concluded that the worker had to be "made whole" before the subrogated compensation carrier was entitled to any portion of the settlement.[35] And although the statute calls for a "fair and equitable distribution,"[36] subrogation in workers' compensation cases is based on statute, and not in equity.[37]

[10] The district court appeared to focus on a distribution that would be equitable only to Kroemer. But the distribution must be "fair and equitable"[38] to both the employee and the employer or its insurer. Although Kroemer's damages may have been worth over $800,000, Ribbon Weld paid over $200,000 in workers' compensation benefits to Kroemer for an accident for which OTE was liable. Ribbon Weld was

---

[34] *In re Estate of Evertson, supra* note 26.

[35] See *Turco v. Schuning, supra* note 12. See, also, *Sterner v. American Fam. Ins. Co.*, 19 Neb. App. 339, 805 N.W.2d 696 (2011).

[36] § 48-118.04(2).

[37] See *Burns v. Nielsen, supra* note 2.

[38] § 48-118.04(2).

entitled to some portion of Kroemer's settlement with OTE. The court's denial of the same was untenable and must be reversed. But we review a district court's allocation for abuse of discretion, and thus, it is not for us to dictate a fair and equitable distribution in the first instance.

## VI. CONCLUSION

Under the circumstances, the district court did not abuse its discretion in determining that the amount of Kroemer's settlement with OTE was fair and reasonable. We affirm that part of the court's order. But we conclude that the district court did abuse its discretion in not allocating any of the settlement proceeds to Ribbon Weld. Accordingly, we reverse that portion of the court's order and remand the cause to the district court with direction to make a fair and equitable distribution between Kroemer and Ribbon Weld of the remaining $94,834.27 of the settlement proceeds.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

HEAVICAN, C.J., not participating.