IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


VILLEGAS V. BRIDGES, INC.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ADRIANA MARTINEZ VILLEGAS, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF JOSE REZA VILLEGAS, APPELLEE,

V.

BRIDGES, INC., AND ITS WORKERS' COMPENSATION INSURER, ZURICH AMERICAN INSURANCE CO.,
APPELLANTS.


Filed March 31, 2026.    No. A-25-440.


Appeal from the District Court for Harlan County: TIMOTHY E. HOEFT, Judge. Affirmed.

Jessica R. Voelker, of McAnany, Van Cleave & Phillips, P.A., for appellants.

Eric B. Brown, of Atwood Law, P.C., L.L.O., for appellee.


MOORE, PIRTLE, and FREEMAN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Jose Reza Villegas died in the scope and course of his employment with Bridges, Inc. (Bridges). Bridges, through its workers' compensation insurer, Zurich American Insurance Co. (Zurich) (collectively appellants), began paying workers' compensation benefits to his wife Adriana Martinez Villegas, and subsequently to his estate. His estate pursued a third-party wrongful death claim against Adams Construction Co., the responsible third-party tort-feasor, which ultimately settled the claim for $3,000,000.

Thereafter, this case was filed in the district court for Harlan County to determine the "fair and equitable division" of the remaining $100,000 in settlement proceeds between Jose's estate and appellants' subrogation interest for workers' compensation benefits paid or to be paid to Jose's estate, pursuant to Neb. Rev. Stat. § 48-118.04 (Reissue 2021). After an evidentiary hearing, the

- 1 -

district court found that appellants were entitled to an equitable subrogation interest totaling $27,612.21 for actual amounts that had been paid to date, and awarded appellants a credit for future payments or distributions of $47,891.22. The remaining $72,387.79 in trust was awarded to Adriana. Appellants appeal from the district court's order claiming this result was not fair and equitable. For the reasons that follow, we affirm.

## II. BACKGROUND

Jose died on November 16, 2021, after a tree fell on him while he was working on a bridge project near Orleans, Nebraska. At the time of his death, Jose was acting in the course and scope of his employment with Bridges. Zurich was Bridges' workers' compensation carrier on the date of Jose's death. Appellants paid workers' compensation benefits to Adriana, Jose's widow. Jose and Adriana had four children, all over the age of 25 at the time of his death.

On February 8, 2023, Adriana was appointed by a Kansas district court as the administrator of Jose's estate. Adriana, individually and as a personal representative of Jose's estate, made a third-party wrongful death claim against Adams Construction Co. arising out of Jose's death. Adriana's initial settlement demand was for $4,950,000. On July 14, at a mediation, the claim was amicably settled for $3,000,000. Adriana's attorney fee was one-third of the settlement, $1,000,000, and $100,000 was placed in a trust account reserved for a potential workers' compensation subrogation claim. The adult children of Adriana and Jose received a combined total of $1,000,000. The remainder of the settlement was for Adriana.

Following the $3,000,000 settlement, Adriana filed an application for division of settlement proceeds in the district court for Harlan County pursuant to § 48-118.04. Adriana alleged that, in addition to burial expenses, Zurich was obligated to pay Adriana lifetime death benefits under Neb. Rev. Stat. §§ 48-122 and 48-122.01 (Reissue 2021). Adriana estimated that at the time of filing, Zurich had paid approximately $85,000 in burial and weekly death benefits under the Nebraska Workers' Compensation Act (the Act). Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2021 & Cum. Supp. 2025).

A hearing was held on January 23, 2025, in the district court. Twenty exhibits were offered and received into evidence. One of the exhibits was an economist's calculations on the value of certain losses after Jose's death. Another exhibit was a joint stipulation setting forth uncontroverted facts. The parties stipulated Jose's weekly wages for the twenty-six weeks prior to his death, how Jose died, and that there was a $3,000,000 third-party wrongful death settlement reached with Adams Construction Co.

Multiple weekly death benefit rates were presented to the court. Appellants' exhibit 14 listed two different weekly death benefit rates previously paid to Adriana, $806.17 and $266.04. Adriana most recently received $266.04 as her weekly payment for several weeks. Exhibit 18 listed appellants' calculation of Adriana's weekly death benefit rate as $610. During the hearing, appellants did not specify or provide an explanation as to why there were multiple weekly death benefit rates.

At the hearing, Adriana testified that she settled for only $3,000,000, because she did not believe she would have a better chance at trial because "most people here would be composed of white, you know, for the trial and so that we would be – because of our difference of color, skin color, and because of the language barrier."

Following the hearing, the parties filed a joint stipulation clarifying their positions on the distribution of the settlement. Appellants argued that of the $3,000,000 settlement, $2,000,000 should be the portion of the third-party recovery considered by the court in its § 48-188 determination, after subtracting Jose's children's $1,000,000. Adriana argued that $1,000,000 should be the portion considered by the court in its determination, after subtracting both the children's $1,000,000 and the $1,000,000 in attorney fees.

The court found that at the time of the evidentiary hearing, appellants had paid a total of $118,278.89 of workers' compensation benefits and continued to pay weekly death benefits to Adriana in the amount of $266.04. The court noted that pursuant to the life expectancy tables, appellants had a subrogation claim consisting of the amount already paid of $118,278.89 and future distributions of another $200,000 to $209,471 of present cash value if appellants continued making the same payments and Adriana lived as long as the tables predicted or she did not remarry.

The court determined that there was no question that Bridges had a statutory interest in some of the proceeds recovered in the liability suit, and that Zurich had a subrogation interest arising out of § 48-118, based on the indemnity and death benefits it paid on behalf of Bridges to the estate of Jose and for Adriana. The court found that Adriana's attorney fees were set at one-third of the settlement, and Adriana's attorneys had recovered their $1,000,000 plus expenses. The court concluded that appellants should not benefit from Adriana's attorney's work without contributing to the fees paid by Adriana to counsel. This meant that Adriana was entitled to recover one-third of appellants' share in fees that had already been paid.

The court also considered that the exhibits, testimony, and economist's report reflected that the $3,000,000 settlement was a significant compromise of the actual value of the claim. The court found that the economist was prepared to testify that there were $2,707,181 in economic losses alone. The court determined that a reasonable demand for the settlement of this case could have been $10,000,000, but that, because of the "political climate and other factors" considered by Adriana's attorneys, Adriana made a demand for less than $5,000,000 and settled for $3,000,000. The court found that the case settled for 30 to 40 percent of its actual value, and that appellants must contribute to the attorney fees paid as a part of the recovery, with the amounts credited back to Adriana.

The court determined that appellants' subrogation interest for actual amounts paid was $118,278.89; the subrogation claim for future exposure was $205,145.50; and appellants were entitled to 35 percent of their subrogation interest, less attorney fees. The court therefore found that appellants' subrogation interest in paid benefits was $41,397.61, less the one-third attorney fees of $13,785.40, for a total of $27,612.21. The court also found that appellants were entitled to 35 percent of their future distributions amounting to $71,800.93, less attorney fees of $23,909.71, and awarded appellants a credit for future distributions of $47,891.22. Finally, the court awarded the remaining amount in trust of $72,387.79, which was after payment of the subrogation interest of $27,612.21, to be distributed to Adriana.

## III. ASSIGNMENTS OF ERROR

Our rules of appellate practice require that the appellant's initial brief include a section containing a "separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." Neb. Ct. R. App. P.

§ 2-109(D)(1) (rev. 2021). Appellants have not presented any assignments of error in their brief on appeal.

## IV. STANDARD OF REVIEW

Ordinarily, distribution of the proceeds of a judgment or settlement under § 48-118.04 is left to the trial court's discretion and reviewed for an abuse of that discretion. See *Kroemer v. Omaha Track Equip.*, 296 Neb. 972, 898 N.W.2d 661 (2017). However, where a brief fails to comply with the mandate of § 2-109(D)(1)(e), we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *Swicord v. Police Stds. Adv. Council*, 309 Neb. 43, 958 N.W.2d 388 (2021). Plain error is error plainly evident from the record and of such nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

## V. ANALYSIS

As noted above, appellants have failed to assign any error, so we choose to examine the proceedings for plain error. Appellants generally argue that the district court erred in its allocation of settlement proceeds.

### 1. OVERVIEW

When an employee injured as a result of a third person's tortious conduct receives compensation from his or her employer and from the tort-feasor, an issue arises as to how to divide any proceeds obtained from the third party. *Kroemer v. Omaha Track Equip., supra.* "The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse it for its compensation outlay, and to give the employee the excess." *Id.* at 979, 898 N.W.2d at 666-67.

Section 48-118 provides:

> When a third person is liable to the employee or to the dependents for the injury or death of the employee, the employer shall be subrogated to the right of the employee or to the dependents against such third person. The recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his or her dependents should have been entitled to recover.
>
> Any recovery by the employer against such third person, in excess of the compensation paid by the employer after deducting the expenses of making such recovery, shall be paid forthwith to the employee or to the dependents and shall be treated as an advance payment by the employer on account of any future installments of compensation.

The Supreme Court has stated that § 48-118 clearly mandates that proceeds in excess of the employer's subrogation interest must be paid forthwith to the employee. See *Kroemer v. Omaha Track Equip., supra.* But how the remaining proceeds should be divided does not automatically allocate first claim to the employer. See *id.* The Supreme Court determined that "[t]here is no indication, either in the statutory language or the legislative history, that § 48-118.04 was intended to infringe on the right of subrogation guaranteed by § 48-118 beyond the extent

- 4 -

necessary to effectuate a reasonable settlement." *Kroemer v. Omaha Track Equip.*, 296 Neb. at 981, 898 N.W.2d at 667. Section 48-118.04 provides in part that a settlement of a third-party claim is void unless agreed upon by the employee's personal representative and the workers' compensation insurer, but in the event the parties cannot agree, a court shall order a fair and equitable distribution of the proceeds of any judgment or settlement.

The Supreme Court has stated that a fair and equitable distribution does not require that an employee be "made whole" or that tort proceeds be split proportionately. *Kroemer v. Omaha Track Equip.*, 296 Neb. 972, 981, 898 N.W.2d 661, 667 (2017). In *Bacon v. DBI/SALA*, 284 Neb. 579, 588, 822 N.W.2d 14, 24 (2012), the Supreme Court explained that "the beneficent purposes of the [Nebraska Workers' Compensation] Act concern the employee's ability to promptly obtain workers' compensation benefits—not the employee's ability to additionally retain recovery against negligent third parties in tort actions." The court found "no reason to conclude that the beneficent purposes of the Act require us to narrowly interpret the employer's statutory subrogation rights." *Id.*

Rather, the court determined that "the policies behind the Act favor a liberal construction in favor of the employer's statutory right to subrogate against culpable third parties." *Id.* In an effort to balance the rights of injured employees against the costs to employers, most workers' compensation acts "liberally allow employers to shift liability onto third parties whenever possible." *Id.* The court iterated that "§ 48-118 was enacted 'for the benefit of the employer'" and that "where a third person negligently causes" the employee's injury, "employers who are required to compensate employees for injuries are intentionally granted a measure of relief equivalent to the compensation paid and the expenses incurred." *Bacon v. DBI/SALA*, 284 Neb. at 588-89, 822 N.W.2d at 24.

### 2. DISTRIBUTION IN INSTANT CASE

Generally, appellants argue that Adriana has been overcompensated as the district court erred in (1) finding that Adriana's settlement was 30 to 40 percent of its actual value and (2) utilizing $266.04 as the weekly benefit rate.

### (a) Value of Settlement

Appellants argue that there was no evidence to support the court's finding that the third-party settlement was approximately 30 to 40 percent of the case's actual value. They contend that the settlement proceeds more than compensated Adriana for Jose's earning power, loss of consortium, and pain and suffering, as well as providing full reimbursement to appellants.

The district court determined that Adriana likely settled the third-party claim because of "political factors." The court considered that an economist would have testified that there were $2,707,181 in economic losses alone, and that the total amount of $3,000,000 was a significant compromise of the actual value of the claim. The court considered that a reasonable demand could have easily been $10,000,000, but the actual initial demand was around $5,000,000, which ultimately resulted in a mediated settlement for $3,000,000. After reviewing all the evidence together, the court determined that Adriana had not fully recovered and, thus, distributed the remainder in a manner that it believed was equitable to all of the parties.

We find no plain error in the district court's finding that Adriana settled her third-party claim for 30 to 40 percent of its actual value.

## (b) Benefits Rate

Appellants also argue that the district court erred by utilizing the wrong weekly benefits rate in its calculation of appellants' future credit. Appellants argue that the district court should have used the weekly benefit rate of $610, rather than the benefit rate of $266.04. Appellants suggest that the benefit rate of $266.04 being paid before the hearing was due to previous overpayments, and that the correct weekly death benefit rate was $610.

However, the record does not reflect that $266.04 was the incorrect death benefit rate. The district court had three different weekly death benefit rates to examine in the record: $806.17, $610, and $266.04. The record reflects that for several weeks before the hearing, Adriana was receiving the weekly death benefit rate of $266.04. Prior to receiving a benefit rate of $266.04, Adriana received a death benefit rate of $806.17. Appellants submitted to the court their calculation of Adriana's death benefit rate as $610, although this amount had never been paid to Adriana before.

Based on this record, we cannot say the district court committed plain error by utilizing $266.04 as the weekly death benefit rate in its calculations, as this amount was paid to Adriana multiple weeks prior to the evidentiary hearing. Further, appellants failed to explain, and no other evidence was presented, to establish the basis for appellants' new contention that the only reason Adriana was receiving $266.04 as opposed to $610 was because of an overpayment.

We find that based on this record, it was not plain error for the district court to use $266.04 as the weekly death benefit rate in its calculation of appellants' future credit.

## VI. CONCLUSION

The district court did not commit plain error in its distribution of the settlement proceeds held in trust. Accordingly, we affirm.

AFFIRMED.