EMIL FRITZ, APPELLEE, V. SYLVIA JUNGBLUTH, APPELLANT.

4 N. W. (2d) 911

FILED JULY 17, 1942. No. 31350.

*Bolus J. Bolus*, for appellant.

*Gilbert S. Brown, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff in this action sought (1) a decree determining that he was the owner of two commercial trucks, title to which is held by the defendant, and an order transferring title to him; (2) an accounting of moneys received and disbursed by the defendant from the leasing to a transfer company of these trucks and other commercial equipment and a judgment for the same; (3) a judgment for money loaned to the defendant; (4) a release or cancelation of a chattel mortgage on a truck owned by the plaintiff, executed by the plaintiff and delivered to the defendant; (5) an order restraining the defendant from selling or encumbering the trucks or mortgage; and (6) for equitable relief.

Defendant alleged that the trucks and moneys received were her own and that plaintiff was indebted to her for moneys loaned and paid for his benefit. She prayed for a dissolution of the restraining order, the dismissal of plaintiff's petition, for judgment for money due her, and for equitable relief.

The trial court found for the plaintiff on all of his contentions and entered decree accordingly, including a money judgment for funds of plaintiff held in trust by the defendant and for moneys loaned by plaintiff to defendant. From this decree the defendant appeals, questioning the sufficiency of the evidence to sustain the decree and in any event seeking application of the equitable maxim that one who seeks equity must come into court with clean hands.

The evidence in most respects is in direct conflict. The trial court was presented with the determination of disputed questions of fact. This court faces that same situation. The defendant does not question the amount of plaintiff's recovery, but rather challenges his right to recover any amount and challenges the denial of a money judgment to her.

Plaintiff and defendant, a trained nurse aged 30 years, were friends. There is no dispute that plaintiff in 1939 was the purchaser and the owner of two commercial trucks, the title to one being in his own name and the title to the other being carried in the name of the transfer company. Plaintiff was the driver of one of these trucks. He was also a member of the truckers' union at Omaha. This local union had an oral rule that prohibited a driver from owning and operating more than one truck. This apparently was the reason why the title to the second truck was in the name of the transfer company. Plaintiff purchased a third truck, and, in order to avoid trouble with his union, proposed to quit driving and spend his time managing and caring for the trucks and his business accounts. Plaintiff discussed the situation with defendant. He says that she suggested he transfer title to one of the trucks to her, that she would keep an account of his business, and he could continue driving, and that that is what he did, without any consideration

passing. She says she purchased the trucks. It is agreed that the purpose of the transfer, known to defendant, was to enable plaintiff to avoid the rule of the union. Defendant testified that she bought the first truck in August, 1939, for an agreed consideration of $800, paying $400 down and $100 a month thereafter. Receipts are in evidence for these payments. Plaintiff had paid about $1,300 for this truck shortly before that time. Plaintiff testified that the receipts were all written and delivered at one time in order to show them to the union, if inquiry was made, and that no money was ever paid to him. Defendant testified that she had no idea of the value of the truck, had no knowledge of the trucking business, and relied on plaintiff's statement that it would be a profitable venture for her. Defendant testified that she made these payments out of a fund of $2,500 that she had accumulated from her earnings as a nurse in either six or eight years, which she kept in currency in her apartment, because she had lost some money in a bank in 1930 and was fearful of them. She, however, shortly thereafter opened up a bank account where the earnings of all of this equipment were deposited, amounting to several thousand dollars, and she issued checks against those deposits, apparently without any fear of the safety of the banking institution. Defendant testified that plaintiff was to pay to her the earnings on this truck; that he did not do so and made no accounting to her; that nevertheless she continued to pay the purchase price instalments, and that when the purchase price was fully paid, still without an accounting as to the earnings on the first truck, she purchased the second truck from plaintiff, paying $400 down thereon from her cash funds and took a receipt therefor. He testified that this transfer also was without consideration and to avoid the rule of the union. Plaintiff closed out his bank account and directed that the earnings of the trucks be paid to defendant. She deposited these funds in a bank account in her own name, paid therefrom costs of repairs, operating expenses, instalment payments due on equipment, etc. Plaintiff also purchased two refrigerator trailers, and the earnings from these were paid

to defendant and placed in the bank account. Some time thereafter two of the three original trucks were traded for the two more valuable trucks involved in this litigation, upon which deferred payments were to be made. Plaintiff says that he arranged and approved the trades. Defendant says that she made the transfers on her own initiative. It appears that she conducted at least a part of the negotiations. The earnings of these new trucks were also paid to defendant. In these transactions plaintiff kept title to one of the trucks in his own name (although not always the same truck). Plaintiff executed the note and chattel mortgage upon the truck held in his own name payable to the defendant; this is the note which is involved in this litigation. He says that the note was without consideration and made at defendant's suggestion to protect her from any liability that might not be covered by insurance. She says that the amount of the chattel mortgage ($800) covered $450 estimated earnings on the first truck which she claims to have purchased, some $260 which she says she overpaid plaintiff in these transactions and $90 (estimated) which she says was for small cash loans she made the plaintiff from time to time. If defendant's story is to be believed, in less than two years plaintiff changed his position from that of being the owner of trucks, profitably operated and with a cash surplus, to that of being the owner of one used truck, subject to an $800 indebtedness to defendant, two refrigerator trailers (status of payments not shown) and in addition owing the defendant some $700 unsecured, and defendant from an original investment of $1,300 became the owner of two valuable trucks, subject to unpaid instalments, became the plaintiff's creditor in the sum of over $1,500 and was the owner of a bank account which in March, 1941, is shown to have had a balance of $2,640. We see no reason to further recite details of the evidence. We reach the same conclusion on the facts as that arrived at by the trial court.

Defendant here argues that, notwithstanding a finding in favor of the plaintiff, she is entitled to keep title and possession of plaintiff's property and money and enforce the chat-

tel mortgage.because his purpose of placing it in her hands was to enable him to avoid the application of the union rule that a truck driver could not continue to drive if he were the owner of more than one truck. The union is not here complaining; it is not a party to this transaction; neither it nor its members are shown to have been damaged or prejudiced by what plaintiff did. It is not shown that the union objected to plaintiff's handling of his property in the way that he handled it or that it ever investigated the matter of the title or ownership of the trucks. Plaintiff did not by this transfer seek to place his property beyond the reach of his creditors nor to avoid any order of court, etc. He sought merely to so place the title that his right to drive a truck, as a union member, would not be disturbed. This affected his personal status as a union member. The union had no right to object to the transfer of the property. It had no property right therein or claim of any kind that could attach to the property. The arrangement between the plaintiff and the defendant, whereby she held title to his property, received his funds and paid them out for his benefit, is not shown to be illegal, immoral, or against public policy.

The maxim "He who comes into equity must come with clean hands" is "merely the expression of one of the elementary and fundamental conceptions of equity jurisprudence." 1 Pomeroy, Equity Jurisprudence (4th ed.) sec. 398. "Broad as the principle is in its operation, it must still be taken with reasonable limitations; it does not apply to every unconscientious act or inequitable conduct on the part of a plaintiff. The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject-

matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands." 1 Pomeroy, Equity Jurisprudence (4th ed.) sec. 399. See, also, 21 C. J. 187; 30 C. J. S. 491, sec. 98 c.

"The question to be resolved is whether the complainant's wrongful conduct is connected with, or related to, the dispute between the complainant and the defendant, and not whether the complainant has been guilty of wrong-doing from which he has benefited." 19 Am. Jur. 327, sec. 473. "If the wrong is shown to be merely collateral to the complainant's cause of action, it does not constitute matter of defense." *Ibid*, 328, sec. 475. "In the absence of any other equity arising against plaintiff, the general rule is that the misconduct must be so connected with the subject-matter as to affect the equitable relations between the parties." 21 C. J. 188.

In *Blondel v. Bolander*, 80 Neb. 531, 547, 114 N. W. 574, this court said: "It is to be observed that the conduct which will deprive the plaintiff of a right to resort to a court of equity for the relief to which he would otherwise be entitled must be in connection with the same matter or transaction." "The doctrine that a plaintiff who comes into a court of equity with unclean hands will be denied relief has no application, unless his wrong-doing has some proximate relation to the subject-matter sought to be litigated." *Northwest Ready Roofing Co. v. Antes*, 117 Neb. 121, 219 N. W. 848. See, also, *Weaverling v. McLennan*, 116 Neb. 466, 217 N. W. 956; *Citizens Nat. Bank v. Polski*, 122 Neb. 658, 241 N. W. 110; *Langley v. Devlin*, 95 Wash. 171, 163 Pac. 395, 4 A. L. R. 32; *Carpenters Union v. Citizens Committee*, 333 Ill. 225, 164 N. E. 393, 63 A. L. R. 157; *Teuscher v. Gragg*, 136 Okla. 129, 276 Pac. 753, 66 A. L. R. 143.

Defendant in effect asks an equity court to decree that she is the owner of plaintiff's chattels and money, because he, the plaintiff, sought to avoid the rigors of a union rule, a matter with which this defendant had no concern, and, while

.it may have prompted him to act, it did not in any wise affect the property rights existing between the plaintiff and the defendant or the equities that arose from the arrangement that was made. We see no basis for the application of the maxim to the issues here presented.

The trial court on its own motion allowed defendant a credit of $500 for her services to the plaintiff. About this the plaintiff does not complain. The defendant has been justly and generously treated by the trial court's decree. It is

AFFIRMED.