DONALD R. BURNS, JR., APPELLEE, V. JOHN D. NIELSEN AND
BARBARA NIELSEN, DOING BUSINESS AS DIAMOND HILL
FARMS, APPELLEES, AND FEDERAL EXPRESS
CORPORATION, APPELLANT.

732 N.W.2d 640

Filed June 8, 2007. No. S-06-030.

Dallas D. Jones and Jenny L. Panko, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellant.

Patrick M. Connealy, of Crites, Shaffer, Connealy, Watson & Harford, P.C., L.L.O., for appellee Donald R. Burns, Jr.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Donald R. Burns, Jr., was injured in a work-related accident on the premises of a third party, and settled both a workers' compensation claim and a third-party negligence claim. Burns' employer, the appellant, sought to enforce a subrogation interest in the proceeds of the negligence settlement. The question presented in this appeal is whether the employer was barred from asserting its subrogation interest by equitable principles, based on its allegedly wrongful conduct in the course of contesting Burns' workers' compensation claim.

## BACKGROUND

Burns suffered an accidental injury arising out of and in the course of his employment with the Federal Express Corporation (FedEx). Burns was employed as a courier and was picking up a letter at Diamond Hill Farms on September 30, 1999. Burns stepped onto a walkway made of wooden pallets, and a plank in one of the pallets broke, causing Burns to fall and injure his neck, back, foot, and ankle.

FedEx voluntarily paid $134,647.36 in medical benefits and a total of $43,377.72 in disability benefits through 2004. But FedEx did not pay all of the medical expenses Burns claimed, and questioning causation, FedEx denied further benefits. Burns filed a workers' compensation claim on January 21, 2004. Before trial, however, the parties agreed to settle the claim for benefits already paid, plus a lump-sum payment of $207,500. The settlement was approved by the Workers' Compensation Court.

In the meantime, Burns had filed a complaint in the district court against John D. Nielsen and Barbara Nielsen, doing business as Diamond Hill Farms, alleging that his injuries were caused by their negligence. In an amended complaint filed February 23, 2004, Burns named FedEx as a defendant to determine its subrogation interest.[1] The negligence claim also ended in settlement. The Nielsens' insurer agreed to make a lump-sum payment of $143,052.82 to Burns, and a lump-sum payment of $156,947.18 to the clerk of the court, pending resolution of the subrogation issues. The Nielsens' insurer also agreed to pay Burns $800 monthly for 20 years and a total of $115,139 in lump-sum payments to be made at 5-year intervals beginning September 25, 2009. The agreement provided that

> [n]othing in this Section shall limit [FedEx's] claim against . . . Burns for reimbursement of its subrogation interest and its claim that the payments to be made pursuant [to] these sections shall be treated as advance payments of workers' compensation benefits by [FedEx] to the extent that the Nebraska Workers' Compensation Court determines that [FedEx] is liable for any additional workers' compensation benefits to or on behalf of [Burns] and the Box Butte County District [Court] shall determine whether or to what extent any credit may be allowed or disallowed.

The agreement was approved by Burns, the Nielsens' insurer, and FedEx. The court dismissed Burns' negligence complaint with prejudice on the parties' stipulation for dismissal.

The case then proceeded in district court to a determination of FedEx's subrogation interest and a "fair and equitable

---

[1] See Neb. Rev. Stat. § 48-118 (Cum. Supp. 2006).

distribution of the proceeds of [the] settlement"[2] of the negligence claim. Burns argued that FedEx should not receive any part of the settlement, contending that FedEx had engaged in intentional misconduct against Burns, had unclean hands, and was equitably estopped from asserting its subrogation interest. The essence of Burns' argument was that FedEx had behaved inequitably in resisting the workers' compensation claim, in part because the experts it retained and relied upon were not reliable. Burns contended that FedEx had "flip-flopped on causation" by voluntarily paying benefits, then denying benefits, then, after the settlement of the workers' compensation claim, asserting a subrogation interest in the proceeds of the negligence settlement.

The district court agreed with Burns. In a journal entry, the court stated that it was "abundantly clear, this is a gross understatement, that [FedEx] has changed [its] position like a merry-go-round throughout the history of . . . Burns' case." The court stated that it "clearly believe[d] that FedEx comes before this Court with unclean hands for numerous reasons and finds that the conduct of FedEx meets the elements of equitable estoppel." The court adopted and entered a memorandum order prepared by Burns' counsel.

The memorandum order asserted that "[t]his [was] a proceeding in equity and equitable principles apply." Of the money deposited with the clerk of the district court, the order directed payment of $62,734.94 in fees and expenses to Burns' counsel in the negligence claim, leaving "a balance of $98,468 to be *fairly and equitably* divided by the court." (The total sum, $161,203.87, apparently was composed of the $156,947.18 originally paid to the clerk of the district court, plus interest accrued during the proceedings.)

In addition to restating the journal entry's conclusions with respect to unclean hands and estoppel, the order rejected FedEx's argument that Burns' Social Security disability benefits and disability insurance benefits should be considered in determining what was a "fair and equitable distribution." The order stated that it would strain the workers' compensation statutes to allow

---

[2] See Neb. Rev. Stat. § 48-118.04 (Cum. Supp. 2006).

FedEx's subrogation claim to attach, indirectly, to those benefits. The order also stated that consideration of Social Security and insurance disability benefits would violate the collateral source rule. As with the journal entry, the order concluded that FedEx was barred from recovering any of the negligence settlement proceeds.

## ASSIGNMENTS OF ERROR

FedEx assigns, consolidated and restated, that the court erred in (1) determining, based on the application of equitable principles, that FedEx was not entitled to recover any of its subrogation interest in the proceeds of the negligence settlement; (2) determining that the collateral source rule barred consideration of other benefits Burns received as a result of his accident; and (3) determining that of the total negligence settlement, only $161,203.87 was subject to distribution among the parties.

FedEx also assigns that the court erred in not utilizing a "rule of proportionality" to determine a fair and equitable distribution of the negligence settlement proceeds. However, we recently rejected an identical argument in *Turco v. Schuning*,[3] which we decided after FedEx's brief was filed. We decline to reconsider *Turco*, and do not further consider this argument.

## STANDARD OF REVIEW

 Distribution of the proceeds of a judgment or settlement under § 48-118.04 is left to the trial court's discretion and reviewed for an abuse of that discretion.[4] A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.[5]

 Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[6]

---

[3] See *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415 (2006).

[4] *Id.*

[5] *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 713 N.W.2d 471 (2006).

[6] *Livengood v. Nebraska State Patrol Ret. Sys.*, ante p. 247, 729 N.W.2d 55 (2007).

## ANALYSIS

### FAIR AND EQUITABLE DISTRIBUTION
### OF SETTLEMENT PROCEEDS

■ Before considering the precise issues presented by this appeal, it will be helpful to review the general framework in which those issues arise. Section 48-118 provides:

> When a third person is liable to the employee or to the dependents for the injury or death of the employee, the employer shall be subrogated to the right of the employee or to the dependents against such third person. . . .
>
> . . . .
>
> Nothing in the Nebraska Workers' Compensation Act shall be construed to deny the right of an injured employee or of his or her personal representative to bring suit against such third person in his or her own name or in the name of the personal representative based upon such liability, but in such event an employer having paid or paying compensation to such employee or his or her dependents shall be made a party to the suit for the purpose of reimbursement, under the right of subrogation, of any compensation paid.

In short, § 48-118 grants an employer who has paid workers' compensation benefits to an employee injured as a result of the actions of a third party a subrogation interest against payments made by the third party.[7]

Prior to 1994, an employer would have been entitled to dollar-for-dollar recovery of its subrogation interest.[8] However, 1994 Neb. Laws, L.B. 594, changed the law in that regard. Those changes are now codified in § 48-118.04, which provides in relevant part that

> [i]f the employee or his or her personal representative or the employer or his or her workers' compensation insurer do not agree in writing upon distribution of the proceeds of any judgment or settlement, the court, upon application,

---

[7] *Turco, supra* note 3; *Combined Insurance v. Shurter*, 258 Neb. 958, 607 N.W.2d 492 (2000).

[8] See *Jackson v. Branick Indus.*, 254 Neb. 950, 581 N.W.2d 53 (1998).

shall order a fair and equitable distribution of the proceeds of any judgment or settlement.

The legislative history of L.B. 594 reveals that the purpose of what is now § 48-118.04 was to prevent a fair and reasonable settlement between the employee and third-party tort-feasor from being delayed because the parties could not agree on how the proposed settlement should be distributed. As the introducing senator explained, workers' compensation cases

sometimes . . . move slowly through the court for no other reason other than [that] third parties, when you have a lot of parties involved you can't seem to get the cases settled. . . . Oftentimes, in determining either under the doctrine of subrogation or third party medical providers or what have you can't agree on a settlement amount, what percentage should be paid, or whatever in a disputed claim, and because of that the case itself slows down. This would allow the court to step in at that time and say, this is a reasonable settlement figure, it ought to go. This is a reasonable distribution of those proceeds.[9]

As further explained before the Committee on Business and Labor,

often a lawsuit involving subrogation claims move[s] slowly through the court system because parties to a lawsuit cannot resolve conflicts as to how a proposed settlement offer should be distributed among the parties. LB 594 would . . . authorize district court judges before whom an action is pending involving workers' compensation subrogation to order a fair and equitable distribution of a settlement offered to the parties entitled thereto if the court determines that the settlement offer is adequate and in the best interest of the parties.[10]

Because § 48-118.04 directs the district court, when the parties cannot agree, to order a "fair and equitable distribution" of settlement proceeds, we have said that the changes made by

---

[9] Floor Debate, L.B. 594, Committee on Business and Labor, 93d Leg., 2d Sess. 8098-99 (Jan. 18, 1994).

[10] Committee on Business and Labor Hearing, L.B. 594, 93d Leg., 1st Sess. 59 (Feb. 22, 1993).

L.B. 594 called for application of the law of equity to the statutory right of subrogation.[11] However, subrogation in workers' compensation cases is still based on statute, and not in equity.[12]

Thus, in *Turco v. Schuning*,[13] we applied statutory subrogation, and rejected the argument that the statute had adopted pure equitable subrogation. Specifically, in *Turco*, the district court had applied principles of equitable subrogation and denied a workers' compensation insurer's subrogation claim because the employee had not been "made whole" by his settlement with the third-party tort-feasor's insurer. We applied statutory subrogation and declined to read into the statute a requirement that the employee be "made whole."[14] We explained that while the language now set forth in § 48-118.04 provided for a fair and equitable distribution, it did not adopt the "made whole" doctrine or adopt any other specific rule for determining how to fairly and equitably distribute the settlement.[15] That distribution was left to the court's discretion.[16]

■ It is in this context that the present case arises. FedEx argues that the district court in this case erred by applying equitable principles to bar it from recovering on its subrogation interest. We agree. We conclude, based on our consideration of the statutory scheme, that the phrase "fair and equitable distribution," as used in § 48-118.04, was not intended to permit the subrogation interest of an employer or workers' compensation insurer to be subject to equitable defenses such as those relied upon by the district court.

■ First, we observe that § 48-118 provides, in definitive language, that when a third person is liable to an employee or employee's dependents for the injury or death of the employee, "the employer *shall* be subrogated to the right of the employee

---

[11] *Jackson, supra* note 8.

[12] See, *Turco, supra* note 3; *Combined Insurance, supra* note 7.

[13] *Turco, supra* note 3.

[14] *Id.*

[15] *Id.*

[16] *Id.*

or to the dependents against such third person."[17] As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.[18] There is no indication, either in the statutory language or the legislative history, that § 48-118.04 was intended to infringe on the right of subrogation guaranteed by § 48-118 beyond the extent necessary to effectuate a reasonable settlement.

We also note that the Nebraska Workers' Compensation Act,[19] of which § 48-118.04 is a part, provides for compensation and penalties for wrongful conduct on the part of an employer—none of which affect an employer's subrogation interest. In particular, when an employer fails to pay compensation within 30 days of the notice of disability or entry of an award, the employer may be subject to a penalty of 50 percent of the delinquent payment.[20] An employer who fails to pay compensation or medical benefits is subject to an award of attorney fees and interest on the final award obtained.[21] And an employer who willfully fails to secure the payment of compensation, or who conceals property or records with the intent to avoid payment of compensation, may be found guilty of a Class I misdemeanor.[22]

In other words, the Nebraska Workers' Compensation Act expressly provides the sanctions to be imposed when an employer fails to comply with its requirements. The mandate for prompt payment of benefits requires that employees and insurers promptly handle and decide claims. If they do not, and there is no reasonable controversy about compensability, then penalties will be assessed.[23] But those sanctions are imposed by

[17] § 48-118 (emphasis supplied).

[18] *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, 270 Neb. 347, 701 N.W.2d 379 (2005).

[19] Neb. Rev. Stat. ch. 48, art. 1 (Reissue 2004 & Cum. Supp. 2006).

[20] § 48-125(1).

[21] § 48-125(2) and (3).

[22] §§ 48-125.01 and 48-145.01(1).

[23] *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved in part on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005).

the Workers' Compensation Court, in a workers' compensation proceeding. We do not read § 48-118.04 as implicitly authorizing the district court to punish an employer beyond the penalties expressly prescribed by the workers' compensation statutes.

Nor would it be wise public policy to punish an employer by barring it from asserting a subrogation interest. The purpose of the Nebraska Workers' Compensation Act's penalty provisions is to encourage prompt payment of benefits.[24] A subrogation interest is acquired by *paying* benefits to an injured employee—conduct that is hardly wrongful and that the Nebraska Workers' Compensation Act is intended to encourage. Section 48-118 serves this purpose, encouraging prompt payment of benefits, even when a third party is liable for the injury, by providing an employer or insurer with the means to recover at least a portion of its payout. But an employer or insurer unable to secure subrogation will be less likely to pay benefits in the first instance, contrary to the intent of the statute. A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose.[25] The Nebraska Workers' Compensation Act is intended to provide benefits for employees who are injured on the job and should be construed to accomplish that purpose.[26] The district court's interpretation of § 48-118.04 is contrary to the purpose of the workers' compensation statutes.

In particular, the equitable doctrines relied upon by the district court—unclean hands and estoppel—are inapplicable under these circumstances. Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue.[27] But the doctrine is specifically predicated upon *equitable* rights, and is enforceable against a

---

[24] *Id.*

[25] *Pepitone v. Winn,* 272 Neb. 443, 722 N.W.2d 710 (2006).

[26] See *Soto v. State,* 269 Neb. 337, 693 N.W.2d 491 (2005).

[27] *Olsen v. Olsen,* 265 Neb. 299, 657 N.W.2d 1 (2003); *Manker v. Manker,* 263 Neb. 944, 644 N.W.2d 522 (2002).

party seeking equitable relief.[28] An employer or workers' compensation insurer asserting subrogation under § 48-118 is not seeking equitable relief, and the doctrine of unclean hands has no application. ·

 The district court specifically identified "equitable estoppel" as another basis for barring FedEx from receiving a share of the settlement proceeds. But the doctrine of equitable estoppel applies where, as a result of conduct of a party upon which another person has in good faith relied to his detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed.[29] The related doctrine of promissory estoppel is based upon a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee which does in fact induce such action or forbearance.[30] There is no suggestion in this case, nor evidence to support a finding, that Burns acted in reliance upon a representation or promise made by FedEx. Neither of these doctrines of estoppel is applicable.

 Closer to the district court's reasoning is the doctrine of judicial estoppel, which holds that one who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.[31] The district court asserted that FedEx had "changed its positions" and taken "inconsistent positions" to meet the exigencies of this case and Burns' workers' compensation proceedings. The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.[32]

---

[28] See *Fritz v. Jungbluth*, 141 Neb. 770, 4 N.W.2d 911 (1942).

[29] *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997); *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996).

[30] *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999).

[31] *Stewart v. Bennett, ante* p. 17, 727 N.W.2d 424 (2007).

[32] *Id.*

But absent judicial acceptance of the inconsistent position, the application of the rule is unwarranted because no risk of inconsistent results exists.[33] Here, the Workers' Compensation Court never endorsed the allegedly inconsistent assertion of FedEx that Burns' injury was not compensable. Nor is it necessarily inconsistent for an employer to contest the compensability of an injury before the Workers' Compensation Court but claim a subrogation interest in the proceeds of a third-party settlement.

If there is a reasonable controversy as to the compensability of an injury, an employer is entitled to litigate that issue in the compensation court. An employer's subrogation interest in the proceeds of a third-party settlement is contingent solely upon the employer's paying workers' compensation benefits to an employee injured as a result of the actions of a third party.[34] To protect its subrogation interest, the employer is not required to concede the merits of the employee's compensation claim or make an affirmative statement to the district court endorsing the employee's demand for compensation. An employer may voluntarily pay benefits to an injured employee, yet contest some or all of the injured employee's claims before the compensation court. The employer may even prevail in the compensation court and still assert a subrogation interest based on whatever workers' compensation benefits it has already paid. It is simply not inconsistent for an employer to defend against a workers' compensation claim, yet claim subrogation based on workers' compensation benefits it has nonetheless paid. Whether the employer's defense against the workers' compensation claim is reasonable is determined by the Workers' Compensation Court under the Nebraska Workers' Compensation Act, not in the district court by resort to equitable principles.

In short, the district court's duty under § 48-118.04 to "order a fair and equitable distribution of the proceeds of any judgment or settlement" simply requires the court to determine a reasonable division of the proceeds among the parties. The court in

---

[33] Id.

[34] See, § 48-118; Combined Insurance, supra note 7.

this case erred in applying equitable principles to bar FedEx from recovering any of its subrogation interest. FedEx's first assignment of error has merit.

## REMAINING ASSIGNMENTS OF ERROR NOT RIPE FOR CONSIDERATION

 FedEx's second assignment of error takes issue with the district court's statement that "consideration of [Burns'] social security and insurance disability benefits would violate the collateral source rule." The collateral source rule provides that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.[35] However, because the district court determined that FedEx was equitably barred from recovering any of the proceeds of the settlement, the court never directly confronted whether the determination of a "fair and equitable distribution" of the settlement proceeds permits or requires the court to consider an employee's other sources of support, such as Social Security or disability benefits. In the absence of argument on that point and a record directly implicating the issue, we decline to address it in this appeal.

Finally, FedEx assigns that the district court erred in "determining that out of the $475,000.00 tort settlement, only $161,203.87 was subject to distribution among the parties." But we do not read the court's order as necessarily making such a determination. Rather, we understand the court's order as disposing of $161,203.87 because that was the amount of money that the court had to dispose of. Obviously, the court's conclusion that FedEx was not entitled to *any* of the settlement proceeds meant that the court did not have to consider whether FedEx's "fair and equitable" share of the proceeds was greater than the sum paid to the clerk of the court for distribution. Again, in the absence of a record squarely implicating the issue FedEx raises, we decline to consider it.

---

[35] *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006). See, also, §§ 48-130 and 48-147.

## CONCLUSION

The district court erred in concluding that equitable principles barred FedEx from recovering its subrogation interest in the proceeds of Burns' third-party settlement. The judgment of the court is reversed, and the cause is remanded with directions for the court to order a "fair and equitable distribution of the proceeds" of the settlement, consistent with the interpretation of § 48-118.04 articulated in this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.