IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SHRINER V. FRIEDMAN LAW OFFICES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DEBRA A. SHRINER, APPELLANT,

V.

FRIEDMAN LAW OFFICES, P.C., L.L.O., AND DANIEL H. FRIEDMAN, APPELLEES.

Filed December 18, 2018.    No. A-17-993.

Appeal from the District Court for Lancaster County: WILLIAM B. ZASTERA, Judge. Reversed and remanded for further proceedings.

James D. Sherrets and Jared C. Olson, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Renee Eveland, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Debra A. Shriner filed a legal malpractice action against her former personal injury attorney and his law firm in the district court for Lancaster County. Shriner claimed she was coerced by her attorney during a mediation into accepting a $45,000 settlement offer for her personal injury. The district court granted summary judgment in favor of the attorney and his law firm. Shriner appealed; this court reversed and remanded the cause for further proceedings. In a postremand deposition, Shriner's position about what happened at mediation changed. She now claimed she had fired her personal injury attorney at the mediation and rejected the settlement offer. The district court determined that Shriner's changed position allowed it to dismiss her action as a matter of law, and therefore, the court again granted summary judgment favoring the attorney and his law firm. Shriner appeals; we reverse and remand the cause for further proceedings.

- 1 -

# BACKGROUND

## MEDIATION AND ENFORCEMENT OF SETTLEMENT

Shriner was injured in a motor vehicle accident in December 2006, when a truck struck her vehicle as she was driving through an intersection. In June 2010, she filed a lawsuit against the truck's driver and his employer. Shriner was represented in her personal injury action by attorney Daniel H. Friedman, and his law firm, Friedman Law Offices, P.C., L.L.O. (the name "Friedman" will be used to refer to Friedman and Friedman Law Offices collectively, as well as to Friedman individually). In the course of a mediation which took place in July 2012, a $45,000 settlement offer was made by the defendants and their insurer and Friedman accepted the offer on Shriner's behalf.

Shriner subsequently informed Friedman she would not sign a release or accept the proceeds of the settlement. The defendants filed a motion to enforce the settlement in the district court for Hall County, and Friedman filed a motion to withdraw. After a hearing, the Hall County District Court granted both motions. The defendants' insurer then filed a complaint for interpleader and declaratory judgment seeking to deposit the settlement funds of $45,000 with the court clerk for distribution. By order of the district court, the funds were deposited and the insurer and defendants were released from liability.

Shriner, through a new attorney, filed a motion to approve the settlement and requested the court to disperse the settlement proceeds in the amounts designated in her motion. The Hall County District Court entered an order in March 2013 approving the agreement and ordering the settlement proceeds dispersed in the manner proposed by Shriner. Shriner received $11,340.85 of those proceeds. Additional facts about Shriner's underlying personal injury action and related proceedings can be found in this court's decision addressing Shriner's first appeal from her legal malpractice action. See *Shriner v. Friedman Law Offices*, 23 Neb. App. 869, 877 N.W.2d 272 (2016) (*Shriner I*).

## LEGAL MALPRACTICE LAWSUIT

Shriner filed a legal malpractice action against Friedman in the district court for Lancaster County on December 31, 2013. An amended complaint filed in September 2014 contained four counts: (1) professional negligence, (2) breach of contract, (3) breach of implied contract, and (4) fraud. Shriner alleged that Friedman coerced her into accepting the "grossly inadequate" settlement offer of $45,000. Shortly after Friedman filed an answer and affirmative defenses to Shriner's amended complaint, Friedman filed a motion for summary judgment arguing Shriner's claim was barred under the doctrines of res judicata, collateral estoppel, equitable estoppel, judicial estoppel, and waiver. Shriner filed a cross-motion for summary judgment. In December 2014, the district court granted Friedman's motion for summary judgment, finding that Shriner voluntarily agreed to the settlement and ratified it when she accepted the benefit of the $45,000 in the interpleader action.

Shriner appealed and this court reversed the district court's decision to grant summary judgment in favor of Friedman. We determined that Shriner's claims were not barred by claim preclusion, issue preclusion (with the exception of the issues of enforceability of the settlement

agreement against the underlying defendants and Friedman's entitlement to attorney fees), judicial estoppel, or equitable estoppel. We held that simply because Shriner was precluded from relitigating the enforceability of the settlement agreement, that did not mean she was precluded from arguing that Friedman breached the standard of care for an attorney by advising her to accept, or by pressuring her into accepting, the $45,000 settlement offer. We affirmed the denial of Shriner's cross-motion for summary judgment, and we remanded the cause for further proceedings. See *Shriner I*. Friedman filed a petition for further review with the Nebraska Supreme Court; it was denied in September 2016.

PROCEEDINGS ON REMAND

Following remand from *Shriner I*, Shriner was deposed in April 2017. Her deposition testimony revealed assertions of fact different and inconsistent from claims she had previously made. Where she had previously claimed she was coerced into accepting the $45,000 settlement, she was now claiming she fired Friedman during the mediation and she had rejected the settlement offer. The month following Shriner's deposition, Friedman filed a "Motion for Summary Judgment and Protective Order," in which he claimed that there was "no genuine issue of material fact on liability and causation," or alternatively, that this action was barred by "equitable or legal doctrines and the law of the case determined by the [Nebraska] Court of Appeals" and that he was entitled to judgment as a matter of law. Friedman generally alleged that from prior affidavits and pleadings to the postremand deposition, Shriner had put forth mutually inconsistent versions of her story. Friedman requested dismissal of the case. Friedman also moved for a protective order that certain depositions need not be taken until the district court issued an order upon his motion. In June, Shriner filed a "Motion to Compel and Continue Depositions," in which she alleged that Friedman's motion did not need to preclude the depositions or warrant entry of a protective order.

On July 14, 2017, Shriner executed a supplemental affidavit. She claimed that during the mediation, Friedman and the mediator told her the defendants in the underlying case offered to settle for $45,000. Shriner averred that she was upset and told Friedman and the mediator that she "did not accept that offer." She then had a private conversation with Friedman in which she told him she wanted to go to trial. Shriner claimed that Friedman "made several representations to coerce [her] into accepting the settlement offer," such as telling her that her "claims were no longer 'viable' and demanding that [she] either accept the settlement or pay him $30,000 in costs to take [her] case to trial." Shriner's affidavit further stated that she "felt as though [she] did not have any other choice but to settle and [she] told him that." When Shriner tried to convince Friedman her case was worth more, Friedman insisted that she accept the offer. Shriner stated, "I was outraged by Mr. Friedman's coercion and bully tactics and I stormed out of the mediation without accepting the settlement offer," and shortly after mediation, Shriner discovered the $45,000 settlement was accepted without her consent. Shriner also averred that during her [postremand] deposition, Friedman's counsel never asked her about affidavits or other statements Shriner had made in the action; Shriner was not aware "that Friedman's counsel was confused by [her] statements until after the depositions were completed."

On July 17, 2017, Friedman filed a "Statement of Undisputed, Material Facts for Summary Judgment and Notice of Service of Same," in which he moved for summary judgment in his favor

- 3 -

on the separate basis of a claim that Shriner's "'Statement of Competing Facts,'" in her opposition brief failed to respond to his alleged facts contained in his "Brief in Support of Summary Judgment" as he contended was required under Neb. Rev. Stat. § 25-1332 (Supp. 2017). That same day, the district court held a hearing on Friedman's motion for summary judgment (it took the other motions under advisement at a hearing on June 29). The district court received exhibits offered by each party. Friedman submitted Shriner's affidavit dated August 21, 2014 (First Affidavit), her amended affidavit from November 3 (Amended Affidavit), and her postremand deposition taken in April 2017. Shriner submitted the deposition of defendant driver from her personal injury case, her present counsel's affidavit (received as an "offer of proof"), a standard of care expert's affidavit, Friedman's deposition from July 2014, and a postremand email exchange between present counsel for the parties. Shriner offered and Friedman "cross-offer[ed]" Shriner's supplemental affidavit executed July 14, 2017 (Supplemental Affidavit).

Further, the district court took judicial notice of the following exhibits upon Friedman's request: Shriner's amended complaint filed September 2, 2014, the district court's previous opinion and order granting summary judgment for Friedman, Shriner's initial notice of appeal, Shriner's brief to this court for the initial appeal, a copy of *Shriner I*, and Shriner's opposition to the petition for further review of *Shriner I*. On Shriner's request, the district court took judicial notice of the transcripts from an underlying hearing in the personal injury action and from the hearing on the previous motions for summary judgment.

The district court entered an order on August 2, 2017, sustaining Shriner's motion to compel and denying Friedman's request for a protective order; depositions were ordered to be taken with 30 days. However, on September 5, the district court entered an order to "resolve all three motions," and it entered summary judgment in Friedman's favor. We discuss the district court's order granting summary judgment in our analysis below. Shriner appeals from that order.

## ASSIGNMENTS OF ERROR

Shriner claims, reordered and restated, that the district court erred in granting Friedman's motion for summary judgment when it (1) found there were no issues of material fact in dispute, (2) disregarded her Supplemental Affidavit as a matter of law, and (3) applied the doctrines of law-of-the-case, judicial estoppel, and equitable estoppel to bar Shriner's claim.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Thompson v. Johnson*, 299 Neb. 819, 910 N.W.2d 800 (2018). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

ANALYSIS

On appeal, Shriner argues there are "too many issues of material fact for summary judgment" and that the "jury will ultimately need to weigh the evidence and determine what occurred during the . . . mediation." Brief for appellant at 18. She contends, "[i]t is ultimately irrelevant whether Friedman coerced [her] into a settlement or accepted without her permission. Either instance is malpractice." *Id.* at 15. Shriner asserts that "[i]n either case, Friedman also committed malpractice by failing to investigate [her] claims and properly advise her, leaving her unprepared for mediation." *Id.* at 18. Shriner alleges that she offered evidence that "Friedman committed malpractice in multiple ways before the mediation even began," and "she relied on Friedman and has been damaged by Friedman's misrepresentations, lack of preparation, and coercion." Reply brief for appellant at 1, 4. Shriner claims that the district court "took [her] statements out of context, disregarded important evidence, and came to an improper conclusion under the *Momsen* standard." Brief for appellant at 25.

Friedman claims, however, that "there exists an irreconcilable conflict in Shriner's under-oath testimony (provided through affidavits, court testimony and deposition) such that her action is barred under legal theories" of law of the case, judicial estoppel, and equitable estoppel. Brief for appellee at 20.

DISTRICT COURT'S SUMMARY JUDGMENT ORDER

In the district court's order entered September 5, 2017, the court noted that Shriner's position taken in her case until her postremand deposition was that "she settled her case, albeit under coercion or duress." It found that Shriner's amended complaint alleged that she "relented under the pressure and duress and 'told [Friedman], in anger, that if that's all [she] had to get, that's what [she]'d have to get'" and that notwithstanding Friedman's "coerced authority to settle," Friedman accepted the offer. The district court quoted substantially from *Shriner I*, and stated the facts recited in *Shriner I* "are accepted as the undisputed facts of the case giving rise to the law of the case." The district court went on to state that Shriner "is now estopped from any attempts to change these basic facts, including the fact of her settling her PI case."

The district court then noted that in Shriner's postremand deposition testimony, she said "she fired [Friedman] . . . at the mediation and rejected the $45,000 settlement" and that the deposition testimony showed that "there was no settlement at all." The court found the deposition testimony contradictory to the position put forth in Shriner's amended complaint, Amended Affidavit, and Supplemental Affidavit. The district court summarized Shriner's deposition testimony as follows.

> At one point, [Shriner] was explicitly asked, "And so at some point did you say, no, we're going to trial, or yes, I'll take the 45,000, but I'm not happy about it?" Her answer was clear, **"Oh, hell no. What I said is**, 'No, I'm not paying you the 30,000 [the money she claims Friedman demanded of her to advance expenses in order to take the case to trial]. No, I do not want the 45.' I said, 'I am going to trial. I am getting another lawyer,' and I grabbed my crap, and I picked it up and I left the office."** . . . She further

- 5 -

said she cursed her way out of the building at that time and on her way out told the insurance people she was not taking the settlement.

(Brackets supplied, underscoring and emphasis in original.)

The district court stated that Shriner "cannot logically take an 'alternative position' approach that, on one hand, she did not settle her case (and that what really happened was that [Friedman] settled it without her authority)" or that "she did settle but was coerced into settling or was under duress."

Under a heading in its order titled "Causation," the district court stated that Shriner "cannot pick a version of a story to suit whatever motion is at hand." It further stated:

If . . . Shriner is held to the sworn deposition testimony, her case fails as a matter of law because it would mean that . . . Friedman was never her lawyer after firing him loudly at the mediation when her intention was to get another lawyer to take her case to trial. His alleged advice could not have caused her any harm because she rejected it. But had [the district court in the underlying action] or this Court or the [Nebraska] Court of Appeals ever been made aware that this was [sic] the true facts, this case would not be where it is today. There would be no proximate cause of any harm. She rejected any advice given to her and knew what her other options were.

The district court stated that the position Shriner took in her deposition was not the formal position she had taken prior in this action, but that Shriner "led [the district court in this action] and the [Nebraska] Court of Appeals to believe (through affidavits) otherwise."

The district court then applied the doctrine of judicial estoppel and found that (1) Shriner's position to be estopped was actually or clearly inconsistent with the previous position and (2) "[a]t least one or up to three courts ha[d] accepted the testimony that [Shriner] accepted the settlement since it was all she believed she could get." It found that the proper remedy for judicial estoppel was dismissal. Further, the district court stated that it was not its duty to "sort out or select a version of facts." Citing to *Momsen v. Nebraska Methodist Hospital,* 210 Neb. 45, 313 N.W.2d 208 (1981), the district court stated, "Competing versions of facts given by a party do not give rise to a dispute of fact." The district court stated that to do so would cause prejudice to Friedman in trying the case and that Shriner had not offered an explanation for the discrepancy, but only "confounded the problem by offering [the Supplemental Affidavit] which only highlights the inconsistencies in her stories."

In considering Shriner's postremand Supplemental Affidavit, the district court concluded that that affidavit contained contradictory facts to those given in her deposition, describing that affidavit as follows.

Paragraph 10 . . . states that "I did not accept that offer" of $45,000 at the mediation. Paragraph 13 states, "Based on . . . Friedman's advice, I felt as though I did not have any other choice but to settle and I told him that, if that was all I had to get, that's what I'd have to get." This directly contradicts what she said at her deposition. She clearly said in her deposition that she understood she could (and did) fire . . . Friedman to get another [personal injury] lawyer to take her case to trial and she rejected the settlement.

The district court then stated that *Momsen, supra*, permitted it "to disregard contradictory testimony as a matter of law." It concluded that the Supplemental Affidavit was offered to refute Friedman's motion for summary judgment and that, therefore, the Supplemental Affidavit was "offered to meet exigencies of the litigation, specifically the motion[,]" and "[a]s such, the court can disregard the [supplemental] affidavit, as a matter of law." It then determined that "[t]his means the court can rely on [Shriner's] deposition testimony in which case, the case can be dismissed because there is no proof that anything [Friedman] did caused [Shriner] to react in any way to her detriment."

Finally, the district court adopted Friedman's position on the issue of equitable estoppel as a "separate grounds for dismissal." The court's application of equitable estoppel elements as applied to Shriner were that (1) Shriner made a false representation either in her deposition or in her evidence and argument submitted in prior proceedings, (2) Friedman relied and was influenced by Shriner's false representations by being forced to defend two different sets of facts, and (3) Shriner has knowledge of the events and was represented by counsel throughout all proceedings. As applied to Friedman, the district court found that (1) Friedman was aware of what actually happened at the mediation, but was "now hamstrung to conduct discovery on the coercion or duress allegedly exercised over [Shriner] because [Shriner] has now disclaimed such facts," (2) Friedman had been forced to defend the case and rely on the facts posited by Shriner and her lawyers, and (3) Friedman had suffered "significant detriment, prejudice[,] and cost in attorneys' fees in defending two different . . . positions taken by Shriner."

The district court found Friedman's alleged facts were undisputed because "[Friedman's] facts simply recited [Shriner's] own testimony, her own affidavits[,] and the opinion of the [Nebraska] Court of Appeals." It found that Friedman's alleged facts were "accepted" and that they "factually support[ed] the legal findings made in [the] [o]rder."

In conclusion, the district court stated that the order resolved all issues of the case and that all four theories raised in Shriner's amended complaint "[professional negligence (first), breach of contract relating to the attorney-client relationship of Shriner and Dan Friedman (second); breach of implied contract also relating to the attorney-client relationship (third), and fraud claiming Shriner was deceived and defrauded on the issue of Friedman advancing litigation costs to her (fourth)]" were "all resolved by the doctrines of judicial and/or equitable estoppel." (Brackets in original.) The district court indicated that none of Shriner's theories of relief could "avoid the outcome that judgment is warranted as a matter of law" and that the equitable doctrines "center[ed] on the unavoidable issue [of] two different versions of the . . . settlement."

DISTRICT COURT'S APPLICATION OF *MOMSEN*

The district court decided it could disregard some of Shriner's evidence because Shriner changed her testimony about what happened at mediation. The court relied upon the standard that, where a party, without reasonable explanation, changes his or her testimony concerning the material facts on a vital issue, such change clearly being made to meet the exigencies of pending litigation, the testimony is discredited as a matter of law and should be disregarded. See *Momsen, supra*. See, also, *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985) (when party's testimony is discredited pursuant to *Momsen*, party is bound by earlier testimony). In such situations, it is

- 7 -

immaterial whether the contradictory testimony is given in a retrial of the same proceeding, in a pretrial deposition in pending litigation, or in related litigation under the same set of facts. See *Momsen, supra.* The important considerations are that the testimony pertains to a vital point, that the party clearly made the change to meet the exigencies of the pending case, and that no rational or sufficient explanation for the change in testimony exists. *Id.* The standard determines whether, under the circumstances of a given case, the admissions bind the party or simply go to the issue of the party's credibility. *Id.* See, also, *Kirchner v. Gast*, 169 Neb. 404, 416, 100 N.W.2d 65, 74-75 (1959) (if standard is not met, party's statements are addressed as "question of credibility for the trier of facts"). This court has stated that "*Momsen* is clear that the doctrine applies when there are two versions of the pertinent story told under oath." *Morgan v. Mysore*, 17 Neb. App. 17, 25, 756 N.W.2d 290, 297 (2008) (*Momsen* did not apply to defendant's narrative, which was not testimony or given under oath).

In *Momsen, supra*, a personal representative of the estate of a decedent (patient) brought a medical malpractice action alleging that the defendant doctor negligently caused the patient's death; the doctor had performed a hysterectomy, following which the patient died from pulmonary edema. A jury returned a verdict in favor of the doctor, but a new trial was granted and the doctor appealed.

At issue on appeal was whether the district court should have granted a directed verdict against the doctor as to certain allegations of negligence since his testimony at trial changed from his testimony at a pretrial deposition. During the pretrial deposition, the doctor stated he had not been given the patient's vital signs by the attending nurse, and that if he had, he would have gone to the hospital because the vital signs indicated a serious condition. However, at trial, the doctor contradicted those earlier statements by claiming he did not go to the hospital because the results of a test did not indicate bleeding, and since the patient was a little better and the vital signs had not changed, his professional medical judgment was that it was not necessary to go to the hospital. The doctor admitted he could not reconcile his trial testimony with that given in his pretrial deposition.

The Nebraska Supreme Court stated, "The question raised with reference to the effect of [the doctor's] testimony in his deposition is whether, under the circumstances of this case, the admissions bind him or simply go to the issue of credibility." *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 53, 313 N.W.2d 208, 212 (1981). Under the standard mentioned above, the Nebraska Supreme Court held that the doctor was bound by his earlier deposition testimony, since the changed testimony concerned the central issue of the doctor's negligence, it was clear the doctor deliberately changed his testimony to meet the exigencies of the trial, and the doctor could not explain the change in his testimony. The *Momsen* court concluded that the jury should have been instructed that the defendant doctor was negligent as a matter of law in not going to the hospital, examining the patient, and attempting to further diagnose her. Additional questions of negligence were for the jury to decide, and therefore the Supreme Court found the trial court did not err in granting a new trial as to the defendant doctor.

In dicta, the Nebraska Supreme Court stated that "[t]he [standard] would not, for example, necessarily apply in an automobile case where a party in his deposition testifies to his estimate of certain distances and then before trial, after a visit to the scene and viewing landmarks, makes

measurements and changes his estimates." *Momsen,* 210 Neb. at 55, 313 N.W.2d at 213. See, e.g., *Converse v. Morse*, 232 Neb. 925, 442 N.W.2d 872 (1989). Moreover, this court has recognized that "while the *Momsen* rule is well known and often asserted, it is actually infrequently applied." *Babel v. Schmidt*, 17 Neb. App. 400, 409, 765 N.W.2d 227, 235 (2009).

In its summary judgment order, the district court quoted substantially from *Shriner I*, and stated the facts recited in *Shriner I* "are accepted as the undisputed facts of the case giving rise to the law of the case." The district court went on to state that Shriner "is now estopped from any attempts to change these basic facts, including the fact of her settling her [personal injury] case." However, in *Shriner I* this court did not determine any factual issues related to Shriner's claims of negligence against Friedman, and thus, there was no law of the case controlling Shriner's negligence claims on remand. But given Shriner's significantly changed position in her postremand deposition testimony and Supplemental Affidavit, we certainly understand the district court's consideration of the principle articulated in *Momsen*, and we discuss that next.

Shriner's amended complaint and initial assertions indicated she was coerced by Friedman into accepting the $45,000 settlement offer. However, in her postremand deposition and Supplemental Affidavit, she stated she did not accept the offer. In fact, in her postremand deposition, Shriner claimed she fired Friedman at the mediation; therefore, as the district court noted, under such circumstances Shriner could not have been coerced by Friedman to accept the settlement. Applying *Momsen*, we consider whether (1) the changed testimony pertains to a vital point, (2) the party clearly made the change to meet the exigencies of the pending case, and (3) any rational or sufficient explanation for the change in testimony exists. Although we conclude the changed testimony pertains to a vital point (claims of negligence) and no rational or sufficient explanation for the changed testimony exists, we are unable to conclude that Shriner made the change to meet the exigencies of the pending case. Unlike *Momsen*, where the defendant doctor changed his testimony at trial to meet the exigencies of the case (to make his position align better with other expert witness testimony at trial), there was no such exigency in Shriner's case. There is simply no reason her case would be better served by changing her testimony regarding what happened at the mediation from being coerced into accepting the settlement to not accepting the settlement at all.

But even if Shriner's changed testimony during her postremand deposition and Supplemental Affidavit could be viewed as meeting the factors set forth in *Momsen*, we are unclear why the district court disregarded only the Supplemental Affidavit and not the postremand deposition as well. The district court found Shriner's Supplemental Affidavit contradictory to her postremand deposition testimony and earlier affidavits and concluded that the Supplemental Affidavit was offered to meet the exigencies of Friedman's motion; thus, it disregarded that affidavit as a matter of law. The court then stated, "This means the court can rely on the deposition testimony in which case, the case can be dismissed because there is no proof that anything Mr. Friedman did caused [Shriner] to react in any way to her detriment."

However, the application of the standard set forth in *Momsen* indicates that where latter changed testimony is disregarded, the party who has set forth the changed testimony is bound to the prior testimony, and not just some of the prior testimony. See *Momsen, supra* (where doctor's later testimony at trial was disregarded as matter of law, doctor was bound by his earlier deposition

testimony). Even if we assume the district court was correct to disregard the Supplemental Affidavit and did so properly, the result would have been that Shriner was bound to all of her prior testimony, not solely her postremand deposition testimony. However, the district court stated that in relying on the postremand deposition testimony, the case could "be dismissed because there is no proof that anything [Friedman] did caused [Shriner] to react in any way to her detriment" and it seemingly concluded on the basis of Shriner's postremand deposition testimony alone that dismissal was warranted. Based on our review of the record, we cannot agree that there are no issues of material fact in dispute, especially where the district court's order did not resolve whether there were issues of material fact in dispute regarding any of Shriner's statements under oath in the testimony and affidavits received as exhibits for purposes of the original summary judgment motion, all of which preceded her postremand deposition testimony.

In *Shriner I*, this court found that Shriner was only barred from issues actually litigated in the underlying actions (enforceability of the settlement agreement as against the underlying defendants and enforceability of Friedman's attorney's lien against a portion of the settlement proceeds), but otherwise we found Shriner was not estopped from litigating her claims in her malpractice action. We did not weigh the evidence regarding the circumstances behind Friedman's advisement regarding the settlement offer. We specifically stated that "simply because Shriner is precluded from relitigating the enforceability of the settlement agreement, it does not mean she is precluded from arguing Friedman breached the standard of care for an attorney by advising her to accept, or by pressuring her into accepting, the $45,000 settlement offer." *Shriner I*, 23 Neb. App. at 886, 877 N.W.2d at 286. And, this allegation is just one claim among several claims, as set forth next, that Shriner asserted in her amended complaint, which have not yet been litigated.

The remainder of Shriner's professional negligence count in her amended complaint contains allegations that Friedman violated the applicable standard of care by (1) entering into a multi-stage fee-sharing agreement with multiple firms, (2) failing to properly value and prosecute her claim, and (3) demanding payment of litigation costs as a prerequisite to continued representation.

Further, Shriner pled three other counts: breach of contract, breach of implied contract, and fraud. In her breach of contract claim, Shriner alleged Friedman failed to abide by the duty of good faith and fair dealing, failed to competently represent her, provided her with unreasonable legal advice at the mediation, refused to advance the costs necessary to proceed to trial, and demanded she advance litigation costs. In her breach of implied contract claim, Shriner alleged that Friedman breached an implied contract (of the attorney-client relationship) in multiple ways similar to those set forth in the breach of contract claim. In her fraud claim, Shriner alleged that Friedman told her she would be responsible for litigation costs only after settlement or judgment on her personal injury claim, but that Friedman knew he would demand Shriner "pay costs of the litigation up front if they could not achieve an easy settlement agreement," and that Friedman "intended to deceive [her] in order to secure a contract for her representation"; she alleged she would not have hired Friedman had she known that he "would stop advancing costs before conclusion of the litigation."

As evident, Shriner's amended complaint included several bases of alleged liability, many of which are not reliant on either Friedman's purported coercion or unauthorized representation. Further, as stated, none of Shriner's allegations within her amended complaint have been litigated.

There are issues of material fact in dispute and, therefore, the district court erred in granting Friedman's motion for summary judgment.

We note that counsel for Shriner raised in oral argument for the first time the possibility of amending the amended complaint, indicating that any inconsistencies between Shriner's altered testimony first raised in her postremand deposition versus her amended complaint would "simply . . . be a matter that could be figured [sic] by amendment." We decline to consider at this time whether such further amendments would offend the principles enunciated in *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981).

JUDICIAL AND EQUITABLE ESTOPPEL

The district court also determined that summary judgment should be granted in favor of Friedman based on principles of judicial or equitable estoppel. We conclude neither doctrine applies here.

The doctrine of judicial estoppel prohibits one who has successfully and unequivocally asserted a position in a prior proceeding from asserting an inconsistent position in a subsequent proceeding. See *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007). The intent behind the doctrine is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding. *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015). For the doctrine to apply, the court in the prior proceeding must have accepted the inconsistent position; otherwise, no risk of inconsistent results exists. *Burns, supra.* The doctrine is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement. *Cleaver-Brooks, Inc., supra.* Bad faith or an actual intent to mislead on the part of the party asserting inconsistent positions must be demonstrated before the judicial estoppel doctrine may be invoked. *Id.*

Even though Shriner has asserted inconsistent positions, she certainly has not "successfully and unequivocally" asserted either of the purported positions regarding the circumstances surrounding Friedman's representation on her behalf in the underlying personal injury action, as the doctrine of judicial estoppel requires for its application. See *Burns*, 273 Neb. at 734, 732 N.W.2d at 650. This court was never presented with the necessity of deciding such circumstances in *Shriner I* and the district court did not do so by implication of granting both of Friedman's motions for summary judgment. See, *O'Connor v. Kearny Junction*, 295 Neb. 981, 988, 893 N.W.2d 684, 690 (2017) (landlord's motion suggested consent to assignees' exercise of option for sale; judicial estoppel applied where "by ordering the sale, the district court accepted [the landlord's] position [in the motion]"); *Burns, supra* (no risk of inconsistent result exists where court in prior proceeding has not accepted inconsistent position; no judicial acceptance was recognized where Workers' Compensation Court never endorsed allegedly inconsistent assertion). Judicial estoppel does not bar Shriner's legal malpractice action.

We also conclude Shriner's action is not barred by equitable estoppel. The elements of equitable estoppel are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to

- 11 -

assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012). As to the other party, the elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. *Id.*

Despite Friedman's alleged detrimental reliance, as Shriner points out, less than a week after Shriner's deposition, Friedman's counsel emailed Shriner's counsel stating the intention to file a summary judgment motion. The deposition ended April 26, 2017, and the email is dated May 2, 2017. Friedman's motion for summary judgment was filed shortly thereafter on May 26. The case is still in the discovery stage of litigation due to the district court granting summary judgment, which as previously concluded, was improperly granted. Further, Friedman has knowledge of the truth as to the facts in question (his representation of Shriner and what took place at the mediation) and has not yet detrimentally relied on either of Shriner's inconsistent assertions in defending against her claims. Equitable estoppel is premature at this stage of the litigation; the doctrine does not apply to bar Shriner's claims.

## CONCLUSION

For the foregoing reasons, we reverse the district court's order granting summary judgment in favor of Friedman, and we remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.